379 S.E.2d 501

**WEST VIRGINIA MEDICAL INSTITUTE**

v.

**WEST VIRGINIA PUBLIC EMPLOYEES INSURANCE BOARD, et al.**

No. 17898.

Supreme Court of Appeals of West Virginia.

April 7, 1989.

Stephen A. Weber, John Andrew Smith, Kay, Casto & Chaney, Charleston, for West Virginia Medical Institute.

Dana Davis, Sp. Asst. Atty. Gen., Charleston, for West Virginia Public Employees Ins. Bd.

PER CURIAM:

As part of cost savings measures, the West Virginia Public Employees Insurance Board (PEIB) decided to implement a pre-admission certification program. A Request for Proposal, with the stated purpose of providing information and guidelines was mailed on February 13, 1987 to prospective bidding companies. In response to

the Request for Proposal, twelve companies submitted proposals. One was the appellant, West Virginia Medical Institute, Inc. (WVMI), and another, Medcost, was the eventual recipient of the contract. The other bidding companies are not involved in this litigation and had no further part in the proceeding under consideration.

This action was originally instituted in the Circuit Court of Kanawha County as a proceeding in mandamus at the relation of WVMI to compel the appellees to deliver to WVMI a contact for the pre-admission certification program. On June 18, 1987 the circuit court entered an order holding that because the contract was for administrative services, *W.Va.Code,* 5A–3–1 [1987] *et seq.* controlled and that PEIB had not abused its discretion in awarding the contract to Medcost. Therefore, the circuit court denied WVMI's prayer for writs of mandamus and prohibition and WVMI was not awarded the contract by court order.

WVMI appealed to this Court seeking a writ of mandamus asserting that it was the "lowest responsible bidder" and should be awarded the contract and PEIB cross-appealed asserting that *W.Va.Code,* 5–16–9 [1988] provides the appropriate standard to judge the award of the contract and the circuit court should not have applied *W.Va. Code,* 5A–3–1 [1987] *et seq.* Because the circuit court applied the correct *Code* provision and the record fails to demonstrate any abuse of discretion in awarding the pre-admission certification contract, we affirm the decision of the circuit court.

I

■ *W.Va.Code,* 5–16–9 [1988] authorizes the PEIB to enter into "...contract or contracts as are necessary to carry out the provisions of this article and to provide the plan or plans of group hospital and

surgical insurance coverage, group major medical insurance coverage and group life and accidental death insurance coverage ..."[1] *W.Va.Code,* 5–16–9 [1988] excepts any contract for insurance coverage from the requirements of *W.Va.Code,* 5A–3–1 [1987] *et seq.* with the following language:

The provisions of article three [§ 5A–3–1 et seq.], chapter five-a of this code, relating to the division of purchases of the department of finance and administration, shall not apply to any contracts for any insurance coverage authorized to be executed under the provisions of this article.[2]

We have consistently held that when a statute is unambiguous, we accept its plain meaning as illustrated by Syllabus Point 2, *State ex rel. Underwood v. Silverstein,* 167 W.Va. 121, 278 S.E.2d 886 (1981):

"Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968).

The plain meaning of *W.Va.Code,* 5–16–9 [1988] requires the provisions of *W.Va. Code,* 5A–3–1 [1987] *et seq.* to apply to all contracts, except for insurance coverage, entered into by PEIB. We find that the provisions set forth in *W.Va.Code,* 5A–3–14 [1982], *infra,* provide the criteria for determining whether the pre-admission certification program contract was properly awarded.

II

■ In *State ex rel. E.D.S. Federal Corp. v. Ginsberg,* 163 W.Va. 647, 658, 259 S.E.2d 618, 625 (1979), we examined the statutory scheme for State purchasing and concluded that "price alone [is not] the exclusive criterion by which State contracts

---

1. As of July 1, 1988, the PEIB was abolished and the Public Employees Insurance Agency was created to replace the PEIB. *W.Va.Code,* 5–16–1 [1988] *et seq.*

2. The provisions of *W.Va.Code,* 5–16–9 [1988] which apply to insurance coverage are:

The public employees insurance board shall award such contract or contracts on a competitive basis. In awarding the contract or

contracts the public employees insurance board shall take into account the experience of the offering agency, corporation, insurance company or service organization in the group hospital and surgical insurance field, group major medical insurance field, and group life and accidental death insurance field, and its facilities for the handling of claims.

are awarded." *W. Va. Code,* 5A–3–14 [1982] provides in pertinent part:

All open market orders, purchases based on advertised bid requests or contracts made by the director or by a state department shall be awarded to the lowest responsible bidder, taking into consideration the qualities of the articles to be supplied, their conformity with specifications, their suitability to the requirements of the government and the delivery terms.

The statute requires a subjective evaluation of quality, service and compatibility with other programs in addition to price.

■ In Syllabus Point 2, *State ex rel. E.D.S. Federal Corp.,* 163 W.Va. 647, 259 S.E.2d 618 (1979), we stated:

"Statutes and ordinances which require public officers or a public tribunal to award a contract to the 'lowest responsible bidder' vest wide discretion in officials." Syl. pt. 5, *Pioneer v. Hutchinson,* [159], W.Va. [276], 220 S.E.2d 894 (1975).

The purpose of this discretion is to encourage a careful evaluation of the statute's subjective criteria. Because evaluation of subjective criteria is complex and demands a high level of field expertise, a contracting agency's decision based on subjective criteria enjoys a heavy presumption of correctness and the contract challenger has the burden of proof to show fraud, collusion or abuse of discretion that is shocking to the conscience. In Syllabus Point 3, *State ex rel. E.D.S. Federal Corp. v. Ginsberg,* 163 W.Va. 647, 259 S.E.2d 618 (1979), we stated:

A state agency which awards a public contract upon criteria other than price is clothed with a heavy presumption that the contracting agency has properly discharged its duties and exercised discre-

tionary powers in a proper and lawful manner; accordingly, the burden of proof in any action challenging the award of a contract by an unsuccessful bidder or a taxpayer is upon the challenger who must show fraud, collusion, or such an abuse of discretion that it is shocking to the conscience.

■ In the present case PEIB employed a three stage process to award the pre-admission certification program contract. The first stage was the request for proposals. The request for proposal was an invitation for a company to provide PEIB with a design and a concrete method to implement a pre-admission certification program. The request for proposal lacked definite specifications and PEIB sought to utilize this "eminently rational, cheap and efficient method of evaluating alternative approaches to [the] problem." *E.D.S. Federal Corp., supra,* 163 W.Va. at 660, 259 S.E.2d at 626. The second stage was an evaluation of the proposals received, which led PEIB to award the contract to Medcost pending an independent evaluation.[3] The third stage was an in-depth, independent evaluation of Medcost's proposal by National Medical Audit, Inc.[4] We note PEIB's use of an independent expert further to evaluate the proposal indicates that PEIB sought to exercise its discretion in an informed, proper and lawful manner.

The only evidence presented by WVMI to overcome PEIB's heavy presumption of correctness was the relative costs of the proposals. The cost per each covered employee per month for WVMI's proposal is $.49 and for Medcost's proposal is $.91. WVMI presents no other information about the proposals or any other subjective criterion. The evidence of cost, by itself, does not show fraud, collusion or such an abuse

**3.** WVMI raises two factual concerns about the PEIB's method of evaluation: (a) WVMI states that the PEIB did not adequately evaluate the proposals prior to its April 1, 1987 meeting because it engaged an additional service to evaluate the Medcost proposal. The record is devoid of any evidence that the PEIB did not adequately evaluate the proposals before awarding the contract. (b) WVMI alleges the Medcost was the only company allowed to make a pre-

sentation at the April 1, 1987 PEIB meeting. However, the record indicates that a Medcost representative attended the meeting, responded to questions but did not make a presentation.

**4.** In addition to evaluating Medcost's proposal, National Medical Audit, Inc. was to assist in establishing the program's initiation, the reports to be furnished and the future evaluation process.

of discretion that it is shocking to the conscience.

PEIB's contract process indicates that subjective criteria and price were considered in awarding the contract. WVMI presents nothing in the record which indicates that the process followed by the PEIB was flawed. Indeed, WVMI's only evidence was the proposals' cost without any information about the quality, services or compatibility with other programs. We find that WVMI *failed to prove* that PEIB improperly discharged its duties in the awarding of the pre-admission certification program contract.

For the reasons set forth above, we affirm the judgment of the Circuit Court of Kanawha County.

Affirmed.