864 P.2d 632

DANA, LARSON, ROUBAL AND ASSOCIATES, a corporation; CSHQA Architects, a professional corporation; Lombard–Conrad Architects, P.A., a professional corporation; Phelps, Inc., a corporation; ABC Corporation; XYZ Corporation; and John Doe I, John Doe II, and John Doe III, Plaintiffs–Appellants,

v.

The BOARD OF COMMISSIONERS OF CANYON COUNTY, Idaho; and Joyce M. Chase, Carlos E. Bledsoe and Glenn O. Koch, individually and as members of the Board of Commissioners of Canyon County, Idaho, Defendants–Respondents.

No. 19321.

Court of Appeals of Idaho.

Oct. 1, 1993.

Petition for Review Denied Dec. 28, 1993.

Lojek, Gabbert & Strother, Chd., Donald W. Lojek, Boise, argued for appellant.

Hamlin & Sasser, James D. Carlson, Boise, argued for respondent.

WALTERS, Chief Judge.

The appellants in this case (Dana, Larson, Roubal and Associates, and other corporations) are several architectural and engineering firms which claim that the district court erred when it granted summary judgment dismissing their complaint against the Board of Commissioners of Canyon County (respondents). The appellants assert that they were denied a property interest in violation of 42 U.S.C. § 1983 and that the respondents breached an implied contract by allegedly changing the rules for responding to a "Request for Proposal" (RFP) to build a new county jail. The appellants claim they were damaged in the amount they spent preparing their responses to the RFP, approximately $71,000 collectively. We affirm.

## Facts and Procedural Background

Because Canyon County's old jail was declared overcrowded and unsafe, the respondents decided to build a new one. A jail task force was convened, and the respondents gathered information and toured jail sites in other states. In January, 1989, they published an RFP to "solicit proposals for replacement" of the existing jail and to "enable the Board ... to receive information" on a "turn key" proposal, that is, one which would see the project through from planning to completion. The respondents determined that they could spend 5.5 million dollars to build the new jail but did not express this figure in the RFP. The RFP called for what is known as a "new generation jail" which would allow centralized, indirect supervision of inmates and minimal staffing. Recognizing that they did not have the expertise to plan the project in detail, the respondents adopted a "design-build" method for construction as authorized in I.C. § 67–2309, requiring the builder to take the project from site preparation to a finished, furnished building. The RFP stated:

Upon receipt ... [proposals] ... shall become the property of Canyon County without compensation to the proponent for use or disposition by the Board in its discretion.... The County reserves the right to accept or reject any or all proposals received or any parts thereof, or to negotiate separately with any source whatsoever if no acceptable proposals are submitted in order to best serve the interests of Canyon County. The RFP is made for information and/or planning purposes only and does not obligate or bind the County contractually to accept any proposal submitted. Subsequent procurement if any will be in accordance with appropriate County contractual action,.... However, the final award ... is contingent upon the successful negotiation of a contract.

The appellants, as individual corporations, submitted proposals to the respondents. The jail task force recommended that none of the four proposals be accepted, however, it orally recommended that

the proposals from the Russell Corporation (Lombard–Conrad Architects) and Western Corrections Group (WCG) be further considered. The respondents evaluated the proposals and focused on those submitted by the Russell Corporation and WCG. The respondents visited construction projects by these two groups and decided that the Russell Corporation plan was not suitable because it was based on the penitentiary the company had built outside of Boise, was too big, was not a "new generation" jail, and was not tailored to the County's needs. The other proposals submitted by the appellants were rejected on the basis that they cost too much, were too big, required higher staffing levels and labor costs, had no video monitoring, or were not "new generation" designs. The WCG proposal was accepted, however, and on July 6, 1989, the respondents negotiated a contract with WCG for the design and construction of the jail.

A short while later, the respondents learned they could not contract with WCG because the latter was not licensed to perform public works contracts in Idaho. The respondents, under time pressure due to a federal lawsuit about conditions in the existing jail, wanted to move the project along quickly. Convinced that WCG presented the best proposal and that WCG's representative, Mr. O. Wesley Box, worked best with the respondents, the respondents rescinded the contract and entered into a personal services contract with Mr. Box on September 11, 1989. The contract provided that Mr. Box would be the County's consultant, representative, and assistant to coordinate the construction, planning, and development of the project. The respondents did not announce publicly that they were recruiting a project coordinator. Despite allegations that Mr. Box had misrepresented himself and was not qualified, the respondents performed their own evaluation of Box and became satisfied with their choice. After his selection, the respondents publicly solicited construction bids from contractors, as required by law, and selected a local architect who drew up plans for the jail.

After learning that their proposals had been rejected in favor of a personal services contract with Mr. Box, the appellants filed a complaint in district court on November 29, 1989. They claimed, among other things, a violation of 42 U.S.C. § 1983 in that the respondents deprived them of a protected property interest in the preparation of their proposals and the expectation that the proposals would be considered according to the procedures announced in Idaho's competitive bidding statute, I.C. § 31–1003. They also argued that the respondents breached an implied contract by not dealing with the appellants in good faith. On December 18, 1990, the district court ruled for the respondents on both claims and an order awarding summary judgment was filed on April 23, 1991.

## Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the case can be decided as a matter of law. I.R.C.P. 56(c); *Moss v. Mid–American Fire and Marine Insurance Co.*, 103 Idaho 298, 302, 647 P.2d 754, 758 (1982); *Whitlock v. Haney Seed Co.*, 110 Idaho 347, 348, 715 P.2d 1017, 1018 (Ct.App.1986). Where, as here, a jury has been requested, the nonmoving party is entitled to the benefit of reasonable inferences drawn from the evidentiary facts. *Anderson v. Ethington*, 103 Idaho 658, 660, 651 P.2d 923, 925 (1982); *Whitlock, supra.* The facts are drawn from a review of the record, consisting of the motions, pleadings, affidavits, depositions, and admissions on file. I.R.C.P. 56(c); *Moss, supra.* Controverted facts are viewed in favor of the party resisting the motion. *Whitlock, supra.*

The party opposing the motion may not merely rest on the allegations contained in its pleadings. It must produce evidence by way of affidavit or deposition to contradict the assertions of the moving party. I.R.C.P. 56(e); *Worthen v. State*, 96 Idaho 175, 176, 525 P.2d 957, 958 (1974). Raising the slightest doubt as to the facts is insufficient—a genuine issue of material fact must be presented. *LePelley v. Grefen-*

*son,* 101 Idaho 422, 428, 614 P.2d 962, 968 (1980). Disputed facts will not defeat summary judgment when the party opposing the motion fails to establish the existence of an essential element of its case. *Badell v. Beeks,* 115 Idaho 101, 102, 765 P.2d 126, 127 (1988) *citing Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Garzee v. Barkley,* 121 Idaho 771, 774, 828 P.2d 334, 337 (Ct.App.1992). "In such a situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

### 42 U.S.C. § 1983

The appellants allege a property interest in having their proposals examined according to the standards enunciated in Idaho's competitive bidding statutes. They argue that the statutes "do not sanction totally arbitrary bid selections founded on impermissible criteria" and that entering into the personal services contract with Mr. Box was an attempt to evade the competitive bidding statutes and was contrary to public policy.

■■■ First, we note that although 42 U.S.C. § 1983[1] provides a remedy for violation of federally protected rights, a state court has jurisdiction to entertain claims brought under the statute. *See, e.g., Scott v. Buhl Joint School District No. 412,* 123 Idaho 779, 852 P.2d 1376 (1993); *Shields v. Martin,* 109 Idaho 132, 706 P.2d 21 (1985).

There are two threshold requirements for a "§ 1983" claim. First, a person must act under color of state law when committing the challenged act. Second, the claimant must establish that the conduct deprived the claimant of a constitutionally protected right, privilege, or immunity. *Leer v. Murphy,* 844 F.2d 628, 632–33 (9th Cir.1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

■■ It is undisputed that the respondents were acting under color of state law when performing the actions of which the appellants complain. The appellants challenge the district court's determination that it was unreasonable, given the language of I.C. § 31–1003[2] and the RFP, for the "bidder" submitting the proposal to believe itself to be the possessor of a constitutionally protected property interest addressed by § 1983.

Our Supreme Court has recently held that "under a competitive bidding statute providing for the award of the contract to the lowest responsible bidder, the lowest bidder has a property interest in the award of the contract." *Scott, supra,* 123 Idaho at 785, 852 P.2d at 1382. Idaho courts have not discussed, however, whether a disappointed *potential* bidder has a constitutionally protected property interest resulting from its submission of a proposal. Noting that there is a fundamental difference between a bidder and a potential bidder, we deem it important to distinguish between a "request for proposal" and an

---

**1.** 42 U.S.C. § 1983 states in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** I.C. § 31–1003 states in pertinent part:
[T]he board of commissioners shall ... advertise in a weekly newspaper of the county for thirty (30) days calling for sealed proposals or bids for the construction of said buildings. The published notice shall contain a general statement of the character and limited cost of the building or buildings, and state that the plans and specifications thereof may be found and examined in the office of the clerk of the board, and state the day when the sealed proposals will be opened and considered. The sealed proposals must be opened and considered publicly, and the contract let to the lowest responsible bidder, unless all bids are rejected; and if all bids are rejected, the board may advertise for new bids, or let the contract, provided it be for a less sum than that offered by the lowest bidder. The board must require a good and sufficient bond of the contractor conditioned for the faithful performance of the contract according to the plans and specifications.

invitation for "bids," two terms that have been used interchangeably in this case. We find the following definitions to be helpful:

> Implicit in the definition of an RFP is the underlying rationale that, in some types of competitive procurement, the agency may desire an ultimate goal but cannot specifically tell the offerors how to perform toward achieving that goal; thus, a ready distinction arises between an RFP and an ["invitation for bids," or IFB]. Typically, an IFB is rigid and identifies the solution to the problem. By definition, the invitation specifically defines the scope of the work required by soliciting bids responsive to detailed plans and specifications set forth. On the contrary, an RFP is flexible, identifies the problem, and requests a solution. Consideration of a response to an IFB is controlled by cost, that is, the lowest and best bid, whereas consideration of an offer to an RFP is controlled by technical excellence as well as cost.

*System Development Corp. v. Dept. of Health and Rehabilitative Services,* 423 So.2d 433, 434 (Fla.Dist.Ct.App.1982). *See also West Virginia Medical Institute v. West Virginia Public Employees Insurance Board,* 180 W.Va. 697, 379 S.E.2d 501 (1989); *State ex rel. E.D.S. Federal Corp. v. Ginsberg,* 163 W.Va. 647, 259 S.E.2d 618 (1979).[3]

With these guidelines in mind, we turn to the definition of a constitutionally protected property interest announced in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), which provides the fundamental statement on the issue. There, the Supreme Court said:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. ....
>
> Property interests, of course, are not created by the Constitution. Rather, their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules and understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents, supra,* 408 U.S. at 577, 92 S.Ct. at 2709; *Scott, supra; Harkness v. City of Burley,* 110 Idaho 353, 715 P.2d 1283 (1986).

Although an RFP may sometimes be in the form of solicitation for competitive bids, *see, e.g., Graham v. Forrest City Housing Authority,* 304 Ark. 632, 803 S.W.2d 923 (1991), the RFP in this case was expressly made "for information and/or planning purposes only" and did not "obligate or bind the County contractually to accept any proposal submitted." Cost—the primary criteria upon which bids are awarded—was not mentioned. Standards were provided for architectural design, engineering, financing, construction, staffing analysis, and the building site. However, the developer was allowed to "go beyond such standards to develop a prototype of new and innovative methods and designs." The County reserved the right to accept or reject all or any part of the proposals received, to "negotiate separately with any source whatsoever," and to consider proposals without compensation to those submitting them. After evaluating submissions, more information was to be sought and final recommendations regarding who to contract with would be made on the basis of an interview. The RFP here sim-

---

**3.** The term "request for proposal" is not defined in the Idaho code and is rarely used there. However, in one statute regarding state printing contracts, it is used in the disjunctive with "bids." That reference states: "where after requests for proposals *or* bids have been made...." I.C. § 60–103. Implicitly, it describes a method of procurement other than by bid.

We analogize to how the term is used in the context of contracts with the federal government. There, it defines a flexible system of negotiating a contract. Glenn E. Monroe, Government Contract Law Manual § 2.31 at 26 (1979). "When a prospective contractor responds to an RFP ... he is not necessarily submitting a final bid but may be merely opening the door for discussions with the government." *Id.,* § 2.35 at 28.

ply was not phrased as an invitation for competitive bids.

Idaho Code § 31–1003 supports this interpretation. It states that the mandatory published notice for competitive bids shall contain a general statement of the project, the cost of the proposed building(s), "and state that the plans and specifications thereof may be found and examined in the office of the clerk of the board. . . ." Here, the budget for the jail was not provided to those responding to the RFP and there were no "plans and specifications" available at the clerk's office. The respondents were relying on responses to the RFP to select a firm to provide plans and specifications.

To support their claim for damages, however, the appellants cite two Idaho cases for the propositions that: (1) a disappointed bidder can recover the costs of preparing its bid; and (2) a disappointed bidder must sue for damages rather than seek equitable relief. *See Neilsen & Co. v. Cassia and Twin Falls County Joint Class A School District 151,* 96 Idaho 763, 536 P.2d 1113 (1975); *Neilsen & Co. v. Cassia and Twin Falls County Joint Class A School District 151,* 103 Idaho 317, 647 P.2d 773 (Ct. App.1982) (opinion following remand). The *Neilsen* opinions held that, in a public works setting, a low bidder's failure to list properly licensed subcontractors as required by I.C. § 67–2310 rendered the bid unresponsive and void, and the "lowest responsible bidder" which followed statutory requirements was entitled to damages and overhead measured in the amount spent in preparing its bid. The *Neilsen* opinions did not address property interests protected by 42 U.S.C. § 1983.

We believe the appellants' reliance on the *Neilsen* cases is misplaced. Here, the appellants were potential bidders only, whereas *Neilsen* presented a true bidding situation. Moreover, in this case only the proposals submitted by the Russell Corporation and WCG were found to merit further review. The appellants have not shown that any individual firm among them would have been awarded the contract. In fact, the record establishes that the respondents

felt only WCG presented a proposal that met the county's needs. When the contract with WCG was determined to be invalid, the respondents maintained their relationship with Mr. Box, perceiving that he provided the best approach to the project.

Further, we do not read the *Neilsen* cases to mandate a claim for damages as the appellants assert. In *Neilsen,* our Supreme Court pointed out that the appellant originally had sued for an injunction and/or writ of prohibition against the county board. However, the appellant was given permission to amend and pray for damages *in the event that decision was appealed and reversed,* which it ultimately was. In other words, the district court had concluded that the appellants should not be left without a remedy if the court was later determined to be in error.

Here, the appellants withdrew from the contract debate and sued for damages immediately after learning that the respondents had entered into the personal services contract with Mr. Box. The respondents were not given the opportunity to correct their conduct had it been declared to be wrongful. No equitable remedies such as an injunction, writ of mandamus, or writ of prohibition were sought to compel the respondents to act as desired. Equitable remedies are proper only when the remedy at law is inadequate. Here, the appellants' grievance actually went beyond the cost of preparing their proposals, which was a unilateral expense they incurred and then tried to impose upon the respondents. The grievance was that the respondents circumvented the law to enter into the contract with Mr. Box and should be prevented from operating that way. From this perspective, a monetary remedy provides inadequate relief.

■ The appellants not only challenge the departure from the RFP, but the process through which the respondents entered into the personal services contract with Mr. Box. By the terms of the RFP, the respondents could reject all bids and start anew. The respondents started anew by pursuing the contract with Mr. Box. Exempted from the definition of county

"expenditures" requiring adherence to competitive bidding statutes are disbursements of county funds to persons performing personal services. I.C. § 31–4002. Because of this exemption, counties may enter into contracts with individuals for personal services requiring special skill or technical learning. *Id.; Coeur D'Alene Lakeshore Owners and Taxpayers, Inc. v. Kootenai County,* 104 Idaho 590, 595, 661 P.2d 756, 761 (1983). It was through this provision that the respondents contracted with Mr. Box.

■ The appellants aver that I.C. § 31–4002 (adopted in 1963) is modified by I.C. § 67–2320 (adopted in 1984), the newer and more specific of the two statutes. The latter recites that "it shall be the policy of this state that all public agencies and political subdivisions ... may make selections for professional engineering, architectural, and land surveying services ... on the basis of qualifications and demonstrated competence ..." and provides guidelines which the political subdivision "may" use. Essentially, the appellants claim that I.C. § 67–2320 was not complied with because the respondents failed to first advertise the fact they wanted to hire a "project coordinator." [4] As project coordinator, Mr. Box appears to have contracted to perform architectural services as defined in I.C. § 54–309(1)(c), such as developing preliminary plans and coordinating the design and development of the new jail, thereby placing him within the strictures of I.C. § 67–2320. Competitive bidding statutes were enacted to protect the public interest by ensuring effective competition, preventing fraud and favoritism, and saving money. *Neilsen, supra,* 96 Idaho at 766, 536 P.2d at 1116; *J & J Contractors/O.T. Davis v. State,* 118

Idaho 535, 536, 797 P.2d 1383, 1384 (1990). The appellants argue that the public interest requires I.C. § 67–2320 to be read as imposing steps the county "shall" take. In other words, the guidelines described in I.C. § 67–2320 should be construed to be mandatory, not discretionary. Our Supreme Court has stated that where the public interest or individual rights require that the thing be done, the word "may" will be interpreted as peremptory or mandatory—in other words, as "shall." *Malone v. Van Etten,* 67 Idaho 294, 301, 178 P.2d 382, 385 (1947); *Shea v. Owyhee County,* 66 Idaho 159, 156 P.2d 331 (1945).

■ When two government promulgations are in "irreconcilable conflict," the one enacted later in time governs, as does a specific statute when compared to a vague statute. *Mickelsen v. City of Rexburg,* 101 Idaho 305, 307, 612 P.2d 542, 544 (1980). We do not interpret I.C. § 67–2320 and I.C. § 31–4002 to be conflicting. Section 31–4002 states that counties may enter into personal services contract without going through the competitive bidding process if the service requires special skill or learning. Section 67–2320 states that it "shall" be state policy that political subdivisions "may" make selections for professional engineering, architectural, and land surveying services on the basis of qualifications and demonstrated competence and provides guidelines which the political subdivision "may" use when making the selections.[5] By its plain language, the latter statute is a discretionary enhancement of the former. Section 31–4002 was intended to allow personal services contracts to be removed from the requirements of competitive bidding statutes. Construing the language of I.C. § 67–2320 to be mandatory would ne-

---

**4.** The respondents assert that the appellants' contention regarding I.C. § 67–2320 was not raised before the district court but was raised for the first time in the appellants' reply brief to this Court. We note that the transcript of the hearing on the motion for summary judgment reveals at page forty-five that the appellants raised the issue during argument before the district court.

**5.** The legislative history of this statute is of little help. The session laws merely restate the stat-

ute and provide a title which states that the act is to "provide legislative intent, to provide a policy that public agencies and political subdivisions of the state may follow...." 1984 Idaho Sess.Laws, ch. 188, § 1, p. 437. The legislative statement of purpose accompanying the measure merely states that the purpose is to "provide for the selection of architecture, engineering, and land surveying professionals by state agencies upon their qualifications and competence and at fair and reasonable prices."

gate this intent. Further, the drafters of I.C. § 67–2320 used both "shall" and "may" within the statute, obviously recognizing the differences between the two. We do not find it necessary to construe these terms beyond their ordinary meanings. *See George W. Watkins Family v. Messenger*, 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990).

The appellants had no legitimate claim to the benefit of being awarded a contract with the respondents. At the most, they had a unilateral expectation. The RFP said nothing more than that if a suitable proposal was submitted, it would merit further negotiations. The RFP did not provide that the lowest cost proposal, or the most elaborate, would win the contract. Other criteria were considered. The respondents exercised their discretion and chose the individual and proposal they thought best suited the County's needs. Here, the rejection of the appellants' proposals and the entering into the contract with Mr. Box does not equate to depriving the appellants of a constitutionally protected property interest.

### Implied Contract

The appellants argue that the respondents breached an implied contract by failing to consider proposals "fairly and in accordance with applicable Idaho statutes." Implied contracts may be implied in fact or in law. *Continental Forest Products, Inc. v. Chandler Supply Company*, 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974). Contracts implied in fact are those where the conduct of the parties implies an agreement from which the contractual obligation arises. *Id.* To find a such a contract, the facts must be such that the intent to make a contract may be fairly inferred. *Lawyers Title Company v. Jacobs*, 102 Idaho 804, 806, 641 P.2d 350, 352 (Ct.App.1982). Contracts implied in law—also known as quasi contracts, unjust enrichment, restitution, or "constructive contracts"—are not contracts at all but are obligations imposed by law to provide a remedy without reference to the intentions or expressions of the parties. *Continental Forest Products, su-*

*pra;* 66 Am.Jur.2d. *Restitution and Implied Contracts* § 2 (1973). The essence of a contract implied in law is that a party has received a benefit from another which it would be inequitable for him to retain without compensation to the other.

Here, the appellants failed to show that the respondents violated the law or did not evaluate the proposals fairly. This was not a request for competitive bids, therefore the competitive bidding statutes did not define the method of operation. Moreover, the respondents rejected the proposals for valid reasons: the proposals cost too much, presented buildings that were too big, did not adequately address staffing requirements or costs, lacked video monitoring, and did not describe "new generation" jail designs.

If the respondents had not rescinded the contract with WCG and had not advertised for bids for construction of the jail, then the appellants might have a valid claim. The undisputed facts, however, are that the respondents determined that most of the proposals were unsuitable. The one suitable proposal could not be pursued because of WCG's lack of an Idaho license. Thereafter, the personal services contract was executed, the construction phase of the project was bid, and a local architect was hired. The RFP contained no guarantees and did not create any duty in the respondents, except to follow the process and act with appropriate discretion as specified in the RFP. The respondents followed the process and exercised their discretion. Therefore, there was no breach of any form of implied contract.

### Motion to Strike

Finally, the appellants challenge the district court's order granting the respondents' motion to strike evidence purportedly protected by the respondents' attorney-client privilege. Although raised before the district court, the issue was first raised on appeal in the appellants' reply brief. The issue goes beyond those denominated in the appellants' opening brief to this Court, therefore we decline to review the issue on appeal. I.A.R. 35(a)(4) and 35(c);

*Owen v. Boydstun,* 102 Idaho 31, 35, 624 P.2d 413, 417 (1981); *Harmston v. Agro-West, Inc.,* 111 Idaho 814, 817, 727 P.2d 1242, 1245 (Ct.App.1986).

### Conclusion

The appellants have failed to establish essential elements of their claims. Therefore, we affirm the summary judgment and order dismissing their complaint and declaring the respondents to be the prevailing parties. Costs to respondents; no attorney fees are awarded on appeal. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979).

SWANSTROM, J., Pro Tem., and SILAK, Acting J., concur.