MID ATLANTIC STORAGE SYSTEMS, INC., Plaintiff,

v.

CITY OF MILTON, Dan Glickman, Secretary, United States Department of Agriculture, in his official capacity, and Bobby Lewis, State Director, Rural Economic and Community Development, United States Department of Agriculture, in his official capacity, Defendants.

Welding, Inc., Intervenor.

Civ. A. No. 3:95–0865.

United States District Court,
S.D. West Virginia,
Huntington Division.

Nov. 20, 1995.

Leonard B. Knee, P. Michael Pleska, Bowles Rice McDavid Graff & Love, Charleston, WV, Richard B. Ashenfetter, Kevin B. Watson, Powell, Trachtman, Logan & Bowman, King of Prussia, PA, for Mid Atlantic Storage Systems, Inc.

Ralph W. Bassett, Jr., Milton, WV, Robert R. Rodecker, Charleston, WV, for City of Milton.

Carl J. Roncaglione, Jr., Daniels Law Firm, Charleston, WV, for Welding, Inc.

Michael E. Hooper, Herndon, Morton, Herndon & Yeager, Wheeling, WV, for Cerrone & Associates, Inc.

Larry W. George, J. Nicholas Barth, Barth, Thompson & George, Charleston, WV, Randolph J. Stayin, Barnes & Thornburg, Washington, DC, for Water and Wastewater Equipment Manufacturers Association.

## ORDER

GOODWIN, District Judge.

Pending before the Court are the motions of the Water and Wastewater Equipment Manufacturers Association and Cerrone & Associates, Inc. for leave to participate as amicus curiae. The Court **GRANTS** both motions. Also pending before the Court is the motion of the plaintiff Mid Atlantic Storage Systems, Inc., (Mid Atlantic) for a preliminary injunction. To assist the Court in the resolution of this motion, the parties have entered into certain stipulations. These stipulations make it possible for the Court to resolve, as a final matter, some of the procedural issues raised in this case. For the reasons outlined below, the Court **ENJOINS** the parties from taking action in furtherance of the *rebidding* process. The Court **ORDERS** the City of Milton to determine whether to award the contract based on the original specifications *or* to reject all bids. If the City decides to pursue the former course, the City should seek concurrence from the United States Department of Agriculture (USDA) and Rural Economic and Community Development (RECD) to award the water storage tank contract to Mid Atlantic based on the original specifications. If the City decides to pursue the latter course, the City may begin the rebidding process anew using new specifications if it so desires. The City may neither consider the threat of lawsuit nor rely on any misunderstanding of the earlier intentions of the USDA and RECD in making its decision. Finally, based on the Court's resolution of this matter, the Court **DENIES** Mid Atlantic's motion for a preliminary injunction as moot.

### I. Background

In June 1995, the City of Milton requested sealed bids for a 500,000 gallon water storage tank. Mid Atlantic submitted a sealed bid for $219,300 for a glass-coated tank; Welding, Inc. submitted a bid for $228,000 for a welded-steel tank. The project specifications required concurrence from RECD, a federal agency within the USDA, which was providing the loan for the project, before a contract would be effective. After the bids were opened, Welding, Inc. wrote a letter to RECD complaining that the bidding specifications were unfair because they required cathodic protection for welded-steel tanks, but not for glass-coated tanks.

RECD wrote the City of Milton requesting that the City provide RECD with a justification for the inclusion of cathodic protection for the welded-steel tank, but not for the glass-coated tank. The engineering firm that prepared the original bid specifications and Ralph W. Bassett, Jr., counsel for the City, complied with this request. On August 8, 1995, RECD wrote a letter to the City. The letter stated in pertinent part: "It is the position of this office that due to pending legal issues, the Town should re-bid the project. In the revised plans and specifications, the requirement for cathodic protection for the welded tank should be removed."

The City of Milton then rejected all bids and advised Mid Atlantic and Welding, Inc. that it would rebid the project. On rebid, Mid Atlantic's bid remained $219,300; Welding, Inc.'s bid was $206,800. Mid Atlantic has come to this Court seeking declaratory and injunctive relief.

### II. Analysis

Section 5–22–1 of the *West Virginia Code* addresses the power of the state and its subdivisions to solicit and reject bids for construction contracts. Section 5–22–1 provides in pertinent part:

> The state and its subdivisions shall ... solicit competitive bids for every construction project exceeding twenty-five thousand dollars in cost. Following the solicitation of such bids, the construction contract shall be awarded to the lowest qualified responsible bidder ...: Provided, That the [s]tate and its subdivisions may reject all bids and solicit new bids on said project.

The West Virginia Supreme Court of Appeals has interpreted § 5–22–1 to give the state and its subdivisions wide, but not absolute, discretion. Syl. pt. 5, *Pioneer Co. v. Hutchinson,* 159 W.Va. 276, 220 S.E.2d 894 (1975), *overruled on other grounds by State ex rel. E.D.S. Federal Corp. v. Ginsberg,* 163 W.Va. 647, 259 S.E.2d 618 (1979). Courts may not interfere with the substantive decision of a public officer or tribunal "in the absence of a clear showing of fraud, collusion or palpable abuse of discretion." *Id.* at syl. pt. 6. The state supreme court has not addressed court interference because of procedural defects.

In *State ex rel. E.D.S. Federal Corp. v. Ginsberg,* 163 W.Va. 647, 259 S.E.2d 618 (1979), the state supreme court discussed the breadth of discretion that courts should give the state and its subdivisions in determining which bidder is the lowest responsible bidder within the meaning of *W.Va.Code* § 5–22–1 (1994). Although this case raises a slightly different issue—when original bids may be rejected and new bids solicited—than does *Ginsberg* and involves procedural concerns not the subject of *Ginsberg, Ginsberg* offers insights into the public policy and practical concerns that inhere in a court's decision to interfere in a municipality's bidding process. *Ginsberg* involved the challenge of an unsuccessful bidder to the West Virginia Department of Welfare's decision to award a contract for a new computer system for Medicaid claims to The Computer Company instead of the plaintiff. The *Ginsberg* court declined to second guess the Department's decision because of the complexity and subjective nature of that decision.

In so doing, the *Ginsberg* court distinguished between court intervention into the substantive and the procedural parts of a government body's decision making process. According to the *Ginsberg* court, trial courts should not substitute their judgment for that of the state *or its subdivisions in cases in which subjective factors beyond price come into play.* "Certainly," explained the Court, "[s]tate officials are not required to accept the lowest price where service, delivery dates, continuity in supply, and other factors not directly related to cost are involved, particularly where these elements have a far greater impact upon the efficiency of [s]tate government than minor differences in price." *Ginsberg,* 163 W.Va. at 659, 259 S.E.2d at 626. The lesson applicable to this case is that the Court should not second guess the City of Milton's decision to include or not to include cathodic protection in the specifications for welded-steel tanks unless that decision resulted from fraud or collusion or was *obviously* wrong. Only in the rarest of instances will a court find that technical issues over which engineers disagree have an *obviously* right or wrong answer.

The *Ginsberg* court, however, emphasized that the *process* of making decisions should be rational. According to the court, "[t]here is no question that a bidder who goes to the expense of preparing a complex proposal has the right to rely upon both the contracting authority's integrity and intelligent use of discretion." *Id.,* 163 W.Va. at 657, 259 S.E.2d at 625. Furthermore, "courts should not guarantee any particular result, but rather only the rationality of the process by which the results are determined...." *Id.,* 163 W.Va. at 657, 259 S.E.2d at 626. The Court **FINDS** that the City of Milton's decision to rebid the contract was based on a significant misunderstanding and thus was not rational. Furthermore, the Court **FINDS** that the proper remedy for this procedural defect is to place the parties in the positions that they were in before the misunderstanding occurred.

■ It is evident from the stipulations made by the City of Milton and the USDA and RECD that the City of Milton misunderstood the meaning of the following language in RECD's letter of August 8, 1995: "It is the position of this office that due to pending legal issues, the Town should re-bid the project. In the revised plans and specifications, the requirement for cathodic protection for the welded tank should be removed." At the hearing on the motion for a preliminary injunction, the Government stated that this letter was not intended as a denial of concurrence, but as a response to the earlier letter from Mr. Bassett, attorney for the City of Milton, which expressed reservations about whether there was sufficient justification for

a requirement of cathodic protection for the welded steel tank. According to the Government, RECD, assuming that the City of Milton wished to rebid the project, only intended to inform the City of Milton in the letter that it would concur in the City's decision to rebid.

The City of Milton clearly misunderstood the intention of the letter. The following stipulation entered into by all parties except the USDA and RECD illustrates the City of Milton's confusion: "Had the U.S. Department of Agriculture not directed the project be rebid and the cathodic protection requirement removed, the City of Milton would have contracted with Mid Atlantic Storage Systems, Inc." Ordinarily, misunderstandings, particularly ones that have little bearing on a decision, will not raise procedural concerns sufficient to justify Court intervention. In a case like this one, however, in which the City of Milton stipulates that the misunderstanding was the key factor in the City's decision to rebid and the City appears reluctant to turn back the clock to the point at which the misunderstanding occurred, the Court has a duty to intervene to "guarantee ... the rationality of the process by which the results are determined." *Ginsberg*, 163 W.Va. at 659, 259 S.E.2d at 626.

In *Delta Data Systems Corp. v. Webster*, 744 F.2d 197 (D.C.Cir.1984), Judge (now Justice) Scalia discussed the proper judicial remedy when a disappointed bidder had suffered harm because of a flaw in the FBI's bid award process. The *Delta* court rejected the trial court's solution of canceling the original contract and awarding the contract to the disappointed bidder. *Id.* at 203–06. The trial court's solution, explained the court, "would in effect [allow] the court to decide what ... would best serve the FBI's needs," a decision which the trial court was ill-equipped to make. *Id.* at 206. Instead the *Delta* court sought to put "the disappointed bidder in the economic position it would have occupied but for the error" by requiring the FBI to reconsider its original decision. *Id.* at 206–07.

Like the *Delta* court, the Court in this case believes that the proper remedy is to put Mid Atlantic in the same economic position it would have occupied but for the City of Milton's error. At the time the City misinterpreted RECD's letter, the City had two options available to it: either seek concurrence from the USDA and RECD to award the contract to Mid–Atlantic or reject all bids (and possibly rebid the contract based on new specifications). Accordingly, the Court does not direct the City to award the contract to Mid Atlantic based on the initial bid. Rather, the Court **DIRECTS** the City to determine whether to award the contract based on the original specifications *or* to reject all bids, whichever it believes will further "the public's interest in efficient public expenditures." *Id.*

In making this decision, the City may not consider the threat of lawsuit by either Mid Atlantic or Welding, Inc.[1] Taking into consideration such a factor is inherently irrational. *Cf. Petricca Construction Co. v. Commonwealth*, 37 Mass.App.Ct. 392, 640 N.E.2d 780, 784 (1994). Whatever the City of Milton's decision, the Court recommends that the City prepare a written opinion setting forth the reasons for its decision. Although not required, this Court agrees with the *Ginsberg* court that such is "the wisest course, particularly when litigation is anticipated." *Ginsberg*, 163 W.Va. at 659, 259 S.E.2d at 626.

### III. Conclusion

In summary, the Court **GRANTS** the motions of the Water and Wastewater Equipment Manufacturers Association and Cerrone & Associates, Inc. for leave to participate as amicus curiae. Additionally, the Court **ENJOINS** the parties from taking action in furtherance of the *rebidding* process and **ORDERS** the City of Milton to determine whether to award the contract based on the original specifications *or* to reject all bids. Finally, the Court **DENIES** Mid Atlantic's motion for a preliminary injunction as moot.

---

1. The City of Milton asserts that the threat of lawsuit had no bearing on its earlier actions. The Court offers this admonition only because the August 8, 1995 letter from the RECD offers "pending legal issues" as the only reason why the City should rebid the project.

The Court believes that compliance with this Order should resolve this dispute. Accordingly, the Court will dismiss this case without prejudice on January 1, 1996, absent circumstances requiring one of the parties to seek further judicial action in this matter.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record.