IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

**FILED**
**November 10, 2015**
**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

No. 15-0635

WISEMAN CONSTRUCTION COMPANY, INC.,
Defendant Below, Petitioner

v.

MAYNARD C. SMITH CONSTRUCTION COMPANY, INC.,
Plaintiff Below, Respondent,
DAVID TINCHER, DIRECTOR OF THE PURCHASING
DIVISION OF THE DEPARTMENT OF ADMINISTRATION;
THE WEST VIRGINIA LOTTERY COMMISSION;
JOHN C. MUSGRAVE, DIRECTOR OF THE WEST VIRGINIA
LOTTERY; JASON PIZATELLA, CABINET SECRETARY
OF THE DEPARTMENT OF ADMINISTRATION;
AND ROBERT S. KISS, CABINET SECRETARY
OF THE DEPARTMENT OF REVENUE,
Defendants Below, Respondents

Appeal from the Circuit Court of Kanawha County
The Honorable Jennifer F. Bailey, Judge
Civil Action No. 15-P-157

AFFIRMED

Submitted:  October 14, 2015
Filed:  November 10, 2015

James M. Cagle, Esq.
Charleston, West Virginia
Attorney for Petitioner
  Wiseman Construction Company, Inc.

Patrick Morrisey, Esq.
Attorney General
Kelli D. Talbott, Esq.
Senior Deputy Attorney General
Greg S. Foster, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for State Respondents

John Philip Melick, Esq.
Nicklaus A. Presley, Esq.
JACKSON KELLY PLLC
Charleston, West Virginia
Attorneys for Respondent
  Maynard C. Smith Construction
  Company, Inc.

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE DAVIS, deeming herself disqualified, did not participate in the decision in this case.
JUDGE JAMES H. YOUNG, JR., sitting by temporary assignment.

SYLLABUS BY THE COURT

1.	"An unsuccessful bidder, who has been unlawfully deprived of a contract by agency action under the State purchasing statutes, *W.Va. Code*, 5A-3-1 *et seq.*, has standing to prosecute an action in mandamus to require that the contract be awarded to him or for an injunction to enjoin violation of the requirement that contracts be awarded to the lowest responsible bidder. Syllabus pt. 2 of *Pioneer Co. v. Hutchinson*, [159] W.Va. [276], 220 S.E.2d 894 (1975) is overruled." Syl. Pt. 1, *State ex rel. E. D. S. Fed. Corp. v. Ginsberg*, 163 W. Va. 647, 259 S.E.2d 618 (1979).

2.	"A *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus." Syl. Pt. 1, *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W. Va. 25, 658 S.E.2d 555 (2008).

3.	"'""Mandamus lies to require the discharge by a public officer of a nondiscretionary duty." Point 3 Syllabus, *State ex rel. Greenbrier County Airport Authority v. Hanna,* 151 W.Va. 479[, 153 S.E.2d 284 (1967)].' Syllabus point 1, *State ex rel. West Virginia Housing Development Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545 (1969)." Syl. Pt. 1, *State ex rel. Williams v. Dep't of Military Affairs,* 212 W.Va. 407, 573 S.E.2d 1 (2002).

4.	The Director of Purchasing may waive minor irregularities in bids or specifications pursuant to West Virginia Code of State Rules § 148-1-4 (2015) as part of

i

the decision to award a government construction contract to the "lowest qualified responsible bidder," as defined by West Virginia Code § 5-22-1(b)(1) (2015), so that the purchasing value of public funds is maximized to the fullest extent practicable. However, he or she may not treat substantive requirements of the public procurement laws, the advertisement for bids, or the bid forms as mere informalities in order to justify the decision to waive a deviation in a bid.

5. A state agency which awards a public contract to the lowest qualified responsible bidder under the West Virginia Fairness In Competitive Bidding Act, West Virginia Code §§ 5-22-1 to -2 (2015), is clothed with the presumption that it has properly discharged its duties. Accordingly, the burden of proof in an action challenging the award of a contract by an unsuccessful bidder or a taxpayer is upon the challenger, who must show the agency's actions were arbitrary, capricious, or an abuse of discretion. In conducting a review of the competitive bidding process, courts should consider whether there is a rational basis for the administrative decision. This standard requires courts to examine the bidding procedures utilized to ensure they provided a fair process and incorporated sufficient controls to safeguard against abuses.

Workman, Chief Justice:

Respondent Maynard C. Smith Construction Company, Inc. (hereinafter "MCS"), the low bidder on a government construction contract, filed suit to rescind the contract awarded to the next low bidder, Petitioner Wiseman Construction Company, Inc. (hereinafter "Wiseman"). Following an evidentiary hearing, the Circuit Court of Kanawha County, West Virginia, made detailed findings of fact and conclusions of law finding that the determination to disqualify MCS "was not rational" and "was based upon an ambiguous 'requirement' set forth in the bid documents that was of no consequence" to the goal of the State to ensure the work was performed by the lowest qualified responsible bidder. The circuit court granted MCS's petition for writ of mandamus and ordered that the contract be awarded to MCS. Wiseman appealed.

The question before this Court is whether the public officials with the Purchasing Division of the Department of Administration and the Lottery Commission (hereinafter collectively the "Agency")[1] exercised reasonable discretion in determining Wiseman was the lowest qualified responsible bidder on the project. For the reasons that follow, we find the Agency did not, and we affirm the judgment of the circuit court.

---

[1] Respondents David Tincher, Director of the Purchasing Division of the Department of Administration, the West Virginia Lottery Commission, John C. Musgrave, Director of the West Virginia Lottery, Jason Pizatella, Cabinet Secretary of the Department of Administration, and Robert S. Kiss, Cabinet Secretary of the Department of Revenue, filed a joint summary response.

1

## I. FACTUAL AND PROCEDURAL HISTORY

The Agency initiated the competitive bidding process to procure construction work on the Lottery's existing headquarters in Charleston, West Virginia. The Agency's instructions to bidders stated that "Bidders shall use complete sets of Bidding documents in preparing Bids." Six companies submitted bids on the approved bid form. MCS submitted the lowest bid at $7,630,800. Wiseman's bid was second-lowest at $7,786,000. The Agency initially recommended that the project be awarded to MCS; by letter dated March 10, 2015, the Agency informed MCS that it was "the apparent successful bidder" on the contract.[2]

On March 19, 2015, Wiseman e-mailed the Agency and requested that MCS's bid be disqualified because MCS did not submit a "qualification statement" as set forth in the bid documents; bidders were directed to include at least three references from other projects consisting of door replacement and other related construction operations similar to those required on the project.[3] The bid documents erroneously provided that

---

[2] In this letter, the Agency requested MCS provide performance, maintenance, and payment bonds, insurances, and a current contractor's license. MCS submitted all of the items requested by the Agency.

[3] Specifically, the instructions to bidders provided:

1.07 Qualification Statement

A. The qualified Contractor shall have completed a minimum of three (3) projects consisting in part or in whole of building entrance and door replacement including

(continued . . .)

"[t]he Proposal Form includes a section in which the references should be listed." However, neither "Section I" nor "Section II" of the Agency's bid form included a section in which the references could be listed. Furthermore, no information concerning references was among the specified "Required Documents" or was otherwise addressed in the Agency's published requests for bids. Nevertheless, three of the six bidders (including Wiseman) submitted references on documents which were not part of the mandatory bid form.[4] The three other bidders (including MCS) submitted their proposals on the bid form without attaching any documentation concerning references.

After receiving Wiseman's protest, employees of the Lottery Commission reviewed the bidding documents and consulted with employees of the Purchasing Division. The employees believed they did not have the discretion to waive the qualification statement; they determined it was a mandatory requirement because the

> selective demolition, carpentry, installation of replacement door frames, door and door hardware, remedial room finishing, and other related construction operations similar to those required on this project. All bidders shall include at least three (3) references indicating their having completed the three projects as detailed above. References should include the name, location, ownership, and use of the building in addition to the name, address and telephone number of a contact person with the building's owner familiar with the work completed by the Contractor. The Proposal Form includes a section in which the references should be listed.

[4] Wiseman included a list of references on a form not familiar to the Director of Purchasing but apparently taken from "page 6" of some other bid package. The other two contractors provided references on their own stationery.

3

directions provided that bidders "shall include" a list of references on the proposal form. Ultimately, Respondent David Tincher, the Director of Purchasing, awarded the contract to Wiseman after disqualifying MCS for failure to include the references. MCS protested this decision and Mr. Tincher denied the protest without a hearing on April 21, 2015.

On April 22, 2015, MCS filed a petition for writ of mandamus and complaint for declaratory and injunctive relief. At the April 30, 2015, hearing before the circuit court, the Agency called two witnesses, Mr. Tincher and Danielle Boyd, the Lottery's general counsel. Mr. Tincher testified that the Agency did not believe it had the authority to waive the qualification statement: "We felt like our hands were tied." Ms. Boyd testified that the Agency never contacted the references provided by Wiseman. She stated the architect on the project had experience working with both MCS and Wiseman and felt they were qualified bidders. The witnesses could not explain who specifically requested that the bidders list references or why references were requested for this project.

By order entered June 22, 2015, the circuit court granted MCS's petition for writ of mandamus and ordered the Agency to award the contract to MCS. The circuit court found that the Agency's decision to disqualify MCS's bid was not "rational" because the requirement that bidders submit references was ambiguous and served no purpose. The circuit court cited West Virginia Code of State Rules § 148-1-4.6 (2015), which permits the Purchasing Director to "[w]aive minor irregularities in bids or

4

specifications when the Director determines such action to be appropriate[.]" The circuit

court concluded, in part, that

> [i]t is fundamentally unfair for State agencies to pit qualified, sophisticated well-established businesses against one another to argue about the purpose of language in bid documents that no one in charge can explain where the language came from or why it was there or how vendors were supposed to furnish it, and even upon review of the bids, was never utilized or relied upon. It is indeed this conduct that is shocking to the conscience of the [c]ourt.

Wiseman timely appealed this order.

## II. STANDARD OF REVIEW

We are asked to review the circuit court's order granting MCS's petition for writ of mandamus. As a preliminary matter, we note that a disappointed bidder has standing to judicially challenge the award of a public contract to another bidder. In syllabus point one of *State ex rel. E. D. S. Fed. Corp. v. Ginsberg*, 163 W. Va. 647, 259 S.E.2d 618 (1979), this Court held:

> An unsuccessful bidder, who has been unlawfully deprived of a contract by agency action under the State purchasing statutes, *W.Va. Code*, 5A-3-1 *et seq.*, has standing to prosecute an action in mandamus to require that the contract be awarded to him or for an injunction to enjoin violation of the requirement that contracts be awarded to the lowest responsible bidder. Syllabus pt. 2 of *Pioneer Co. v. Hutchinson*, W.Va., 220 S.E.2d 894 (1975) is overruled.

On appeal, our standard of review is de novo. In syllabus point one of

*Harrison County Commission v. Harrison County Assessor*, 222 W. Va. 25, 658 S.E.2d

5

555 (2008), this Court held: "A *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus." Under this standard, "'we consider *de novo* whether the legal prerequisites for mandamus relief are present.'" *McComas v. Bd. of Educ. of Fayette Cty.,* 197 W.Va. 188, 193, 475 S.E.2d 280, 285 (1996) (quoting *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 214, 470 S.E.2d 162, 168 (1996)). Therefore, we take note that

> "'[m]andamus lies to require the discharge by a public officer of a nondiscretionary duty.' Point 3 Syllabus, *State ex rel. Greenbrier County Airport Authority v. Hanna,* 151 W.Va. 479[, 153 S.E.2d 284 (1967)]." Syllabus point 1, *State ex rel. West Virginia Housing Development Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545 (1969).

Syl. Pt. 1, *State ex rel. Williams v. Dep't of Military Affairs,* 212 W.Va. 407, 573 S.E.2d 1 (2002). With these principles in mind, we consider the merits of the parties' arguments.

## III. DISCUSSION

Wiseman seeks our reversal of the circuit court's order granting MCS's petition for writ of mandamus and directing the Agency to award the contract to MCS. Wiseman argues that the circuit court misapplied the standard of review articulated in *Ginsberg* and instead substituted its judgment for that of the Agency's. MCS responds that the circuit court exercised its proper authority to correct the "irrational" disqualification of MCS and saved more than a hundred thousand dollars of scarce public funds.

6

The Agency filed a summary response and conceded that the request for proposals used to solicit bids for the project contained a number of errors and those errors created confusion among the bidders. Although it argued below that it had no discretion to waive the qualification statement, the Agency has retreated from that position; it stated in its brief before this Court that it exercised appropriate discretion by not waiving that requirement. During oral argument, the Agency explained that it did not appeal the circuit court's ruling, not because it agreed with the ruling, but because it needed to commence the renovation project immediately. The Agency acknowledged "the taxpayers of the State of West Virginia are best served" by allowing the circuit court's order to stand.[5]

---

[5] Although it filed no motion to dismiss Wiseman's appeal as moot, the Agency contends that the relief requested by Wiseman (to be awarded the contract) has been rendered moot considering MCS's substantial completion of the construction project. Given the resolution of this case, it is not necessary for this Court to address what remedy would be available to Wiseman had it prevailed on appeal. Nonetheless, we address the legal issues raised by the parties herein consistent with the principles set forth in syllabus point one of *Israel by Israel v. West Virginia Secondary School Activities Commission*, 182 W. Va. 454, 455, 388 S.E.2d 480, 481 (1989):

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

This case involves two questions. We first address whether the Agency had the discretion to waive the qualification statement set forth in the bid specifications. We then address the appropriate standard of review courts should employ when examining challenges to an agency's process in selecting the lowest qualified responsible bidder. Our analysis begins with a brief overview of our public procurement laws.

## A. West Virginia Public Procurement Laws

The Purchasing Division within the Department of Administration oversees and provides purchasing services to the various State agencies. W.Va. Code § 5A-3-1 (2015). The goal is to "ensure the fair and equitable treatment of all persons" who deal with the procurement system of the State of West Virginia. W.Va. Code § 5A-3-1(a)(6). Public procurement laws protect the citizens and businesses of this State by safeguarding the purchasing system to "obtain in a cost-effective and responsive manner the commodities and services required[.]" W.Va. Code § 5A-3-1(a)(10). These laws were enacted to ensure that tax dollars for public works are spent wisely and to guard against public officials entering into contracts because of favoritism. *See generally SE/Z Constr., L.L.C. v. Idaho State Univ.*, 89 P.3d 848, 853 (Idaho 2004) (holding purpose of competitive bidding statutes is to safeguard public funds and prevent favoritism, fraud and extravagance in their expenditure). One of the overriding purposes of our procurement laws is "to maximize to the fullest extent practicable the purchasing value of public funds[.]" W.Va. Code § 5A-3-1(a)(7). The essential safeguard of competitive

8

bidding is to maintain quality and integrity in the procurement system. W.Va. Code § 5A-3-1(a)(9).

With respect to government construction contracts, the Legislature has specifically prescribed the conditions upon which it will permit such work to be done in the West Virginia Fairness In Competitive Bidding Act. W.Va. Code §§ 5-22-1 to -2 (2015). The State must solicit competitive bids for every construction project exceeding $25,000 in total cost. *Id.* § 5-22-1(c).[6] All bids shall be open in accordance with the provisions set forth in West Virginia Code § 5-22-2, except design-build projects which are governed by West Virginia Code § 5-22A-1 to -16.[7] "Following the solicitation of

---

[6] West Virginia Code § 5-22-1 provides four exceptions not applicable here.

[7] The Design-Build Procurement Act, West Virginia Code 5-22A-2, provides the following definitions:

> (3) "Design-build" is defined as providing responsibility within a single contract for design, construction or alteration of a building or buildings, together with incidental approaches, structures and facilities to be constructed, in which services within the scope of the practice of professional engineering or architecture, as defined by the laws of the State of West Virginia, are performed by an engineer or architect duly licensed in the State of West Virginia and in which services within the scope of construction contracting, as defined by the laws of the State of West Virginia, are performed by a contractor qualified and licensed under the applicable statutes. The design-build method of construction may not be used for any other construction projects, such as highway, water or sewer projects.

9

bids, the construction contract *shall be awarded to the lowest qualified responsible bidder* who shall furnish a sufficient performance and payment bond." W.Va. Code § 5-22-1(d) (emphasis added). However, the State "may reject all bids and solicit new bids on the project." *Id.*

Under the plain language of the statute, an agency has two options following the solicitation of bids; it may reject all bids and solicit new bids on the project or award the construction contract to the lowest qualified responsible bidder. The "lowest qualified responsible bidder" is the bidder that bids the lowest price and meets the requirements in connection with the bid solicitation. W.Va. Code § 5-22-1(b)(1).[8] When awarding the contract, the Director of Purchasing may "[w]aive minor irregularities in bids or specifications" when he or she "determines such action to be appropriate[.]" W. Va. Code R. § 148-1-4.6.

In this case, the Agency elected to award the contract based on the bids submitted even after it learned of the defect in the bid form because it wanted to move

---

[8] West Virginia Code § 5-22-1(b)(1) further provides that:

> The bidder must certify that it:
> (A) Is ready, able and willing to timely furnish the labor and materials required to complete the contract;
> (B) Is in compliance with all applicable laws of the State of West Virginia; and
> (C) Has supplied a valid bid bond or other surety authorized or approved by the contracting public entity.

forward with the renovation project. Therefore, the pivotal question before it was whether MCS was the lowest qualified responsible bidder. Had the bid form contained a section for the contractors to list appropriate references, the Agency would have considerable leeway to determine whether a bidder was the best contractor for the job. The Agency had the prerogative to establish objective prequalification standards premised upon a contractor's technical competence and experience constructing similar facilities in order to determine if the bidder was qualified and responsible.

We therefore reject MCS's argument that when specified construction services are sought from licensed, bonded contractors, an agency *must* make the award to the low cost bidder pursuant to West Virginia Code § 5-22-1(d). We agree that a bidder holding the requisite contractors' license is "qualified." However, the statute has the phrase "lowest qualified responsible bidder." *Id*. If MCS's argument were adopted, then the word "responsible" would be read out of the statute.[9] *See* Syl. Pt. 4, *Osborne v. United States*, 211 W. Va. 667, 668, 567 S.E.2d 677, 678 (2002) (stating each word of statute should be given some effect and undefined words will be given their common, ordinary and accepted meaning). Given the common meaning of the word, "responsible" relates to more than a showing that the bidder holds the requisite license. A "responsible

---

[9] MCS questions the efficacy of any reference requirement because it could tilt the playing field against startup construction companies even when they are properly licensed and bonded. We do not question the wisdom of this legislative enactment especially when both contractors in this case are experienced. This Court does not issue advisory opinions. *See State ex rel. Morrisey v. W.Va. Office of Disciplinary Counsel*, 234 W. Va. 238, 246, 764 S.E.2d 769, 777 (2014).

11

bidder" is a contractor "who possesses the requisite skill, judgment, and integrity necessary to perform the contract requested, and who has the financial resources and ability to carry the task to completion." Black's Law Dictionary 1506 (10th ed. 2014).

We now return to the Agency's decision to award the contract to Wiseman. The witnesses stated they had no choice but to disqualify MCS because they could not waive the qualification statement because it was a material requirement in their eyes. However, the Agency's behavior contradicts this position; it did not rely upon the qualification statement at all. Furthermore, the Agency offers no legal support for its argument that it could not waive this irregularity. As discussed above, the Director of Purchasing may waive minor irregularities in bids or specifications pursuant to West Virginia Code of State Rules § 148-1-4 (2015) as part of the decision to award a government construction contract to the "lowest qualified responsible bidder," as defined by West Virginia Code § 5-22-1(b)(1) (2015), so that the purchasing value of public funds is maximized to the fullest extent practicable. However, he or she may not treat substantive requirements of the public procurement laws, the advertisement for bids, or the bid forms as mere informalities in order to justify the decision to waive a deviation in a bid.[10]

---

[10] It is well settled that an agency cannot waive substantive requirements and is required to reject bids which vary materially from the specifications set forth in the published request for proposal. W.Va. Code §§ 5-22-1(g) and 5-22-2(b); *see e.g., Entech* (continued . . .)

12

In the present case, the irregularity in the bids was caused by the Agency's error. The bid documents mistakenly provided that the form included a section in which the qualification statement should be listed. Technically, no bidder could meet that requirement without going outside the bid form. In fact, the bid solicitation was so flawed that half of the contractors who responded ignored the instruction as an obvious mistake. We therefore find that the Agency had the discretion to waive the bid requirement of a qualification statement. Importantly, Wiseman does not assert its bid would be any different or that MCS could not provide a list of references. Therefore, MCS would not gain any competitive advantage if the requirement was waived. Moreover, any such waiver would work no prejudice to the rights of the public for whom the Agency serves.

### B. Judicial Review of an Agency's Decision to Award a Contract

---

*Corp. v. City of Newark*, 798 A.2d 681, 691 (N.J. Super.Ct. Ch. Div. 2002) ("To be accepted, bid proposals must not materially deviate from the specifications set forth by the contracting agency."); *accord Gunderson v. Univ. of Alaska, Fairbanks*, 922 P.2d 229, 235 (Alaska 1996). "A variance is material if it gives the bidder a substantial advantage over other bidders and thereby restricts or stifles competition." *Chris Berg, Inc. v. State, Dep't of Transp. & Pub. Facilities*, 680 P.2d 93, 94 (Alaska 1984).

> In a bid for a construction project, not every variation from the instructions or specifications will destroy the competitive character of the bid. . . . To have that effect, the variation from the instructions or specifications must be substantial, and to be substantial, it must affect the amount of the bid and must give the bidder an advantage or benefit not allowed to other bidders.

*Wilson Bennett, Inc. v. Greater Cleveland Reg'l Transit Auth.*, 588 N.E.2d 920, 925 (Ohio Ct.App. 1990).

In *Ginsberg*, we discussed the breadth of discretion that courts should give

an agency when awarding a government contract to the lowest qualified responsible

bidder. *See* Syl. Pt. 3, *Ginsberg*, 163 W.Va. at 647, 259 S.E.2d at 620 ("A State agency

which awards a public contract upon criteria other than price is clothed with a heavy

presumption that the contracting agency has properly discharged its duties and exercised

discretionary powers in a proper and lawful manner; accordingly, the burden of proof in

any action challenging the award of a contract by an unsuccessful bidder or a taxpayer is

upon the challenger who must show fraud, collusion, or such an abuse of discretion that it

is shocking to the conscience.").

We are cognizant that *Ginsberg* involved the challenge of an unsuccessful

bidder to an agency's decision to award a design-build contract for a new computer

system.[11] In *Ginsberg*, we declined to second guess the agency's decision considering the

complexity and subjective nature of that assessment. Important to our analysis herein, this

Court distinguished between court intervention into the substantive, as opposed to the

---

[11] West Virginia Code 5-22A-2, provides:

> (4) "Design-build contract" means the contract between an agency and a design-builder to furnish the architecture, engineering, and related services as required, for a given public project, and to furnish the labor, materials and other construction of services for the same public project. A design-build contract may be conditional upon subsequent refinements in scope and price, and may permit the agency to make changes in the scope of the project without invalidating the design-build contract.

14

procedural, parts of a government body's decision making process. As recognized by the United States District Court in *Mid Atlantic Storage System, Inc. v. City of Milton*, 903 F.Supp. 995 (S.D. W.Va. 1995), *Ginsberg* admonishes courts to "not substitute their judgment" for that of the agency in cases in which *subjective factors beyond price come into play.*" *Id.* at 997 (emphasis added). Therefore, when evaluating bids on design-build contracts, agencies "are not required to accept the lowest price where service, delivery dates, continuity in supply, and other factors not directly related to cost are involved, particularly where these elements have a far greater impact upon the efficiency of State government than minor differences in price." *Ginsberg,* 163 W.Va. at 659, 259 S.E.2d at 626.

The Lottery building renovation at issue in this case was not a design-build project. Rather, the Lottery hired its own architect to design and specify the renovation. Contractors submitted fixed-price bids to complete the work after reviewing the 700-page project manual prepared by the architect and the 70-page bid solicitation documents. MCS did not file suit to challenge the substantive aspect of the Agency's decision making process; the parties agree that both contractors are well respected in the construction industry and could do the work required for the project. MCS challenged the rationality of the Agency's bid process and alleged its low bid was disqualified for an inconsequential reason.

Therefore, in this appeal we are asked to review the Agency's decision-making process that lead to the disqualification of MCS's bid when the Agency acknowledged procedural defects in the bid solicitation. In *Ginsberg*, we emphasized that an agency's process of making decisions should be rational. "There is no question that a bidder who goes to the expense of preparing a complex proposal has the right to rely upon both the contracting authority's integrity and intelligent use of discretion." *Id*. at 657, 259 S.E.2d at 625. It is clear from *Ginsberg* that West Virginia follows the general rule of vesting an agency with discretion subject to judicial review and this tenet applies to fixed-price government construction contracts. *See generally, Rochester City Lines, Co. v. City of Rochester*, 868 N.W.2d 655, 660 (Minn. 2015) (applying unreasonable, arbitrary, or capricious standard of review to competitive bidding process requires courts to examine bidding procedures to ensure they provide fair process and incorporate sufficient controls to safeguard against abuses"); *Chris Berg, Inc.*, 680 P.2d at 94 (stating determination by public agency of responsiveness of bid is within agency's discretion, subject, on judicial review, to ascertainment there was reasonable basis for decision).

In the area of government contracts, federal courts have developed standards to guide the exercise of judicial review over procurement decisions by federal agencies. *See, e.g., Impresa Construzioni Geom. Domenico Garufi v. U.S.*, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001) (recognizing bid award may be set aside if procurement official's decision lacked rational basis; reviewing courts must determine whether contracting agency provided coherent and reasonable explanation of its exercise of

16

discretion *and* disappointed bidder bears heavy burden of showing award decision had no rational basis). Because the federal standards have the same basic objectives of eliminating favoritism and fraud in procurement decisions and ensuring the good-faith conduct of agency officials in securing public contracts, they are instructive in determining whether the decision of an agency was unreasonable, arbitrary, or capricious.

We hereby hold that a state agency which awards a public contract to the lowest qualified responsible bidder under the West Virginia Fairness In Competitive Bidding Act, West Virginia Code §§ 5-22-1 to -2 (2015), is clothed with the presumption that it has properly discharged its duties. Accordingly, the burden of proof in an action challenging the award of a contract by an unsuccessful bidder or a taxpayer is upon the challenger, who must show the agency's actions were arbitrary, capricious, or an abuse of discretion. In conducting a review of the competitive bidding process, courts should consider whether there is a rational basis for the administrative decision. This standard requires courts to examine the bidding procedures utilized to ensure they provided a fair process and incorporated sufficient controls to safeguard against abuses.

To properly analyze whether there was a rational basis for an agency's determination, courts should weigh two important principles. When an agency acts in a fair and legal manner and within the reasonable exercise of a sound discretion, then courts should not interfere with its decision to award a contract. "Public administration would be hamstrung if courts were free to second-guess reasonable administrative

17

decisions." *Hous. Auth. of City of Opelousas, La. v. Pittman Const. Co.*, 264 F.2d 695, 697-98 (5th Cir. 1959). On the other hand, and no less important, "is the public interest of the state in securing honest competition and in protecting taxpayers from the evils of favoritism and high prices in the letting of contracts for public works." *Id.* Our decision depends on accommodating these two principles.

On the unique facts presented in this case, we find the public interest of ensuring that tax dollars for public works are spent wisely predominates over the Agency's stringent adherence to faulty bid specifications. *See Boh Bros. Const. Co. v. Dep't of Transp. & Dev.*, 698 So.2d 675, 678 (La. Ct. App. 1997) ("To deny a public entity the power to waive insignificant deviations in order to select a low bid on every public works project is contrary to the interests of the taxpaying citizens of this state."). It is difficult for this Court to avoid the conclusion that the Agency showed a complete lack of intelligent use of its discretion. Employing the agency's analysis, MCS's failure to attach a separate sheet of references to the bid form was fatally dispositive yet, at the same time, utterly meaningless; this factor was the sole basis to disqualify MCS's bid even though the Agency readily admitted that it would not have contacted those references because the architect knew the contractors. Not only was the Agency's decision nonsensical, it was contrary to the underlying policy of the public procurement laws. By any reasonable standards, such action offends one's sense of fair play and was an arbitrary abuse of discretion inconsistent with the letter and the spirit of our public procurement laws. Therefore, this Court rejects the argument that the Agency

18

appropriately exercised its discretion when it awarded the construction contract to Wiseman.

## IV.  CONCLUSION

For the reasons explained above, we find no error in the June 22, 2015, order of the Circuit Court of Kanawha County granting MCS's petition for writ of mandamus. Accordingly, we affirm that order.

Affirmed.

19