# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2025 Term

_____

No. 24-ICA-183

_____

**FILED**

**February 20, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA DEPARTMENT OF TRANSPORTATION,
DIVISION OF HIGHWAYS,
Plaintiff Below, Petitioner,

v.

OLYMPUS PAINTING CONTRACTORS, INC.;
GREAT MIDWEST INSURANCE COMPANY; and
SKYWARD UNDERWRITERS AGENCY, INC.,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Kanawha County
Honorable David J. Hardy, Judge
Civil Action No. 22-C-292

AFFIRMED, IN PART,
VACATED, IN PART, AND REMANDED WITH DIRECTIONS
_____

Submitted:  February 4, 2025
Filed:  February 20, 2025

David A. Ford, Esq.
W. Va. Department of Transportation,
Division of Highways, Legal Division
Charleston, West Virginia
Counsel for the Petitioner

Johnson W. Gabhart, Esq.
Johnstone & Gabhart, LLP
Charleston, West Virginia
Counsel for Respondent Olympus
Painting Contractors, Inc.

Thomas J. Moran, Esq.
Wright, Constable & Skeen, LLP
Glen Allen, Virginia
Gene W. Bailey, II, Esq.
David F. Nelson, Esq.
John H. Tinney, Jr., Esq.
Hendrickson & Long PLLC
Charleston, West Virginia
Counsel for Respondents Great Midwest
Insurance Company and Skyward
Underwriters Agency, Inc.

JUDGE WHITE delivered the Opinion of the Court.

WHITE, JUDGE:

West Virginia Code § 5-22-2 (2003) – which, for simplicity we refer to as "Section 2" – creates a process for government agencies to reject "erroneous" bid proposals by contractors who offer to complete a government project. Section 2(b) spells out four conditions that the agency must find before rejecting an erroneous bid proposal. Another part of the statute, Section 2(c), provides that a "contractor who withdraws a bid under the provisions of this section" is subject to a penalty.

In this appeal, respondent Olympus Painting Contractors, Inc. ("Olympus") asserts it discovered a significant clerical mistake in a bid proposal that it prepared for the petitioner, the West Virginia Department of Transportation, Division of Highways ("DOH"), after the proposal was opened by the DOH. Olympus contends it had a right under Section 2 to withdraw the bid proposal upon its discovery of the mistake; the DOH asserts contractors have no right to withdraw bids under Section 2. Still, despite that assertion, DOH broadly claims it decided that Olympus did not make a noticeable mistake and, therefore, was not entitled to the rejection of its bid.

The circuit court below examined the record and, in an order dated March 29, 2024, granted summary judgment to Olympus. Applying the four conditions established in Section 2(b), the circuit court determined that all of the conditions were established and that the DOH should have rejected Olympus's erroneous bid. The DOH

1

appeals that order and asserts, for the first time on appeal, that its decision that no mistake occurred is entitled to complete deference because Olympus did not show the decision was arbitrary, capricious, or an abuse of discretion.

As we discuss below, we find that Section 2 is ambiguous. But, in light of language in the statute and the Legislature's intentions, we interpret the statute and find that, after bids are opened, a government agency must reject a bid proposal that a bidding contractor declares to be erroneous, and seeks to withdraw, if the contractor establishes the four conditions contained in Section 2(b). The record below shows Olympus established three of the four conditions while the DOH offered no evidence to the contrary, and so we affirm the circuit court's ruling in favor of Olympus on those three conditions. Regarding the fourth condition – which asks whether Olympus made any error – the circuit court did not assess whether the DOH's summary conclusion was arbitrary, capricious, or an abuse of discretion; accordingly, we vacate the circuit court's order, in part, and remand for reconsideration of that condition on the existing record.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In early 2021, the DOH posted an invitation soliciting bid proposals[1] for a contract to repair and repaint the Veteran's Memorial Bridge in Brooke County, West

---

[1] The DOH's regulations define a "Proposal" as "the offer of a bidder, on the prescribed form, to perform the work and to furnish the labor and material at the prices quoted." 157 C.S.R. § 3.2.67 (2024).

Virginia. The invitation required every contractor bidding for the contract to, among other things, provide a "bid bond" equal to five percent of the aggregate amount of the contractor's proposal.[2] A bid bond, also called a "proposal guarantee," is simply "security furnished with a bid to guarantee that the bidder will enter into the contract if his or her bid is accepted." 157 C.S.R. § 3.2.69.

Olympus submitted a bid proposing to complete the contract for $5,606,316.34; it included with its proposal a bid bond equal to five percent of the bid total (that is, $280,315.82). The bid proposal was encrypted and submitted using DOH's digital "Bid Express" website,[3] an online program that allowed contractors to examine the contract's specifications, and to enter and modify their proposals up to the moment of opening. The DOH publicly decrypted and opened the bid proposals, from Olympus and

---

[2] *See* W. Va. Code § 5-22-1(d) (2021) ("All bids . . . shall include a valid bid bond or other surety . . . ."); W. Va. Code § 5-22-2(a) (2003) ("No public entity may accept or consider any bids that do not contain a valid bid bond or other surety . . . ."). Similarly, West Virginia Code § 17-4-19(e) (2000) requires bidding contractors to provide "sealed proposals" to the DOH, accompanied by a "certified check of the bidder or bidder's bond . . . in the amount as the commissioner shall specify in the advertisement, but not to exceed five percent of the aggregate amount of the bid[.]" The DOH's regulations require a different process (calling bid bonds a "proposal guaranty") that requires every bid proposal to be submitted electronically and to be "accompanied by a digitally signed proposal guaranty bid bond . . . ." 157 C.S.R. § 3.4.7. *See also*, W. Va. Department of Transportation, Division of Highways, *Standard Specifications for Roads and Bridges*, § 102.6 (2023 edition) ("No proposal will be considered unless accompanied by a digitally signed proposal guaranty (bid) bond . . . made payable to the West Virginia Division of Highways. Bid bonds will be accepted only if submitted electronically.").

[3] The parties also refer to the website as "BIDEX" or "BidX."

other bidding contractors, on March 9, 2021, and Olympus was the lowest bidder. Olympus's bid proposal was about $1.6 million, or 21.89%, less than the next lowest bidder.

On March 15, 2021, after the bid proposals were opened but before the DOH had chosen a winning bidder for the contract, Olympus emailed a letter to the DOH stating that a clerical mistake had resulted in an error in its bid. Olympus asserted that its bid proposal had been constructed using prices calculated by the company's owner, but then written down by a company employee. There were thirty-four different line items in the DOH request for bid proposals; one line item was for 177 feet of "removing and replacing expansion joints." The company owner calculated that $9,340 per foot was an appropriate bid amount for the expansion joint repairs, and the company employee wrote that number down. However, an Olympus clerical employee, tasked with entering the numbers onto the Bid Express website, mistook the "9" in the handwritten documents for a "5" and erroneously input a per-foot unit price of $5,340 (or $4,000 less per foot than intended). For 177 units of this work, the mistake resulted in a bid shortfall of $708,000. Because of the mistake, Olympus asked the DOH to reject its bid pursuant to Section 2, which (as we discuss later) establishes a process for government agencies to reject bid proposals that contain errors.

On March 19, 2021, the DOH replied in a letter noting it had received Olympus's notice of the erroneous bid and the request for the bid to be rejected. However,

4

the DOH stated it was unable to grant Olympus's request because it "considered the bid submitted by Olympus as a valid bid[.]" In a separate letter dated the same day and titled "Bid Accepted," DOH declared that Olympus had been awarded the bridge project and would be required to sign a contract with the DOH within twenty days.

Olympus did not sign the contract. Instead, Olympus retained a lawyer who sent further letters to the DOH containing additional evidence and affidavits. Olympus's lawyer reiterated the plea that the DOH reject Olympus's bid proposal pursuant to Section 2, and he requested an administrative hearing. On May 14, 2021, the DOH's legal division responded that the DOH had again determined that "the Olympus bid is not an error[.]" The DOH lawyer declared that the evidence presented by Olympus "did not prove by clear and convincing evidence" that an error occurred sufficient to "permit the withdrawal of the bid" under Section 2.[4] The DOH lawyer also declared "that no hearing on the issues is necessary" and warned that, if Olympus did not sign the DOH's contract by May 28, 2021, Olympus would forfeit its five percent bid bond.

---

[4] We are uncertain of the source of the DOH lawyer's clear-and-convincing burden of proof, but we note that one of Olympus's letters quoted Federal Acquisition Regulations (which govern federal projects) that require clear and convincing evidence "as to the existence of a mistake and as to the bid actually intended." *See, e.g.*, FAR 14.407-3(b)(1) (2025). However, DOH's counsel conceded at oral argument that Section 2 only requires proof by a preponderance of the evidence.

Olympus refused to sign the DOH contract.[5] On May 28, 2021, the DOH sent an email to the issuer of Olympus's bid bond demanding that the amount of the bond be paid to the DOH. The issuer of the bond, respondent Great Midwest Insurance Company, refused to pay.

The DOH sued Olympus on April 15, 2022, and sought, among other things, to force payment of the bid bond because Olympus failed to sign the DOH's contract after Olympus's bid was accepted.[6] In defense, Olympus continued to argue that it had no obligation to enter a contract because, under the terms of Section 2, the DOH should have rejected Olympus's erroneous bid and returned the bid bond. After conducting discovery, the DOH and Olympus filed competing motions for summary judgment. Both parties asserted that no genuine dispute of material fact existed in the record, and that the circuit court's considerations were to be guided by Section 2.

On March 29, 2024, the circuit court entered an order that granted summary judgment to Olympus and denied the DOH's motion. The circuit court agreed with the parties' contention that there were no genuine issues as to any material fact, and found the

---

[5] The DOH did not award the bridge project to the next lowest bidder (Freyssinet, Inc., which bid $7,216,143.40). Instead, it chose to solicit a new round of bid proposals in Fall 2021. Freyssinet submitted the lowest bid proposal at $7,496,014.10, was awarded the contract, and completed the bridge project the following year.

[6] The DOH also asserted claims against the company that issued Olympus's bid bond, Great Midwest Insurance Company, and the company that investigated the DOH's claim for payment under the bond, respondent Skyward Underwriters Agency, Inc.

case was governed exclusively by Section 2. Under that section, the circuit court noted that a government agency could reject an erroneous bid if four conditions exist:

> (1) An error was made; (2) the error materially affected the bid; (3) rejection of the bid would not cause a hardship on the public entity involved, other than losing an opportunity to receive construction projects at a reduced cost; and (4) enforcement of the bid in error would be unconscionable.

W. Va. Code § 5-22-2(b). Based upon the evidence produced by the parties, the circuit court found "that Olympus made an inadvertent, clerical error when submitting its bid[.]" Olympus had promptly notified the DOH prior to the DOH's award of the contract, and DOH could, with no delay or hardship, have awarded the contract to the next lowest bidder. Because a DOH engineer had testified that a $708,000 bid error would have "drastically" altered Olympus's intended bid, and the testimony of Olympus's owner that the bid error was catastrophic and would have threatened the company's survival, the circuit court found "it was unconscionable for DOH to require Olympus to perform for a price $708,000 below its intended bid."

The circuit court concluded that the "DOH had the authority to reject or withdraw Olympus's erroneous bid and return its bid security as the four conditions set out in West Virginia Code § 5-22-2(b) were met" and that the DOH "should have done so." Because Olympus should not have been compelled to enter into a contract based upon its erroneous bid, the circuit court concluded that the DOH was "not entitled to Olympus's bid security[.]" Therefore, the circuit court granted judgment to Olympus and against the DOH, and it ordered the DOH to return Olympus's bid bond.

7

The DOH now appeals the circuit court's March 29, 2024, summary judgment order that interpreted and applied West Virginia Code § 5-22-2.

## II. STANDARD OF REVIEW

Both parties asserted before the circuit court that summary judgment would be proper because no questions of material fact existed and that the circuit court's ruling centered upon the interpretation and application of Section 2. Summary judgment is appropriate in a case if "there essentially is no real dispute as to salient facts or if [the case] only involves a question of law." *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 58, 459 S.E.2d 329, 335 (1995) (cleaned up). As this case is presented, we assess the circuit court's summary judgment ruling de novo to determine if any inquiry concerning the facts was desirable to clarify the application of the statute. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963) ("A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."). To the extent the circuit court interpreted a statute, our review is also de novo. Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."); Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W.*

8

*Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

### III. DISCUSSION

The DOH's central argument on appeal is that the circuit court erred in its application of the four conditions contained in West Virginia Code § 5-22-2(b). Before turning to the DOH's argument, we must first examine the language of Section 2 to determine the Legislature's intention behind the four conditions. This is because statutes are to be applied so as to achieve the Legislature's goals. Put simply, "[o]ur duty is to get at the intent of the law: we are not responsible for its style." *Pott v. Arthur*, 104 U.S. 735, 736 (1881).

Section 2 contains three paragraphs ((a), (b), and (c)) and is titled in a manner suggesting the statute pertains to three topics: "Designation of time and place for opening of bids; *right to reject or withdraw bid*; bid resubmission." (Emphasis added.) Paragraph (a) plainly applies to the time and place for opening bid proposals and is not relevant to our discussion.[7] Paragraphs (b) and (c), however, are relevant and provide a process with four

---

[7] West Virginia Code § 5-22-2(a) provides:

> The public entity accepting public contract bids shall, in its resolution providing for the contract or purchase and for the advertisement for bids, designate the time and place that the bids will be received and shall at that time and place publicly open the bids and read them aloud. No public entity may accept
>
> Continued . . .

9

conditions for government agencies to address errors contained in bid proposals after the

proposals are opened:

> (b) . . . The public entity may only reject an erroneous bid after the opening if all of the following conditions exist: (1) An error was made; (2) the error materially affected the bid; (3) rejection of the bid would not cause a hardship on the public entity involved, other than losing an opportunity to receive construction projects at a reduced cost; and (4) enforcement of the bid in error would be unconscionable. If a public entity rejects a bid, it shall maintain a file of documented evidence demonstrating that all the conditions set forth in this subdivision existed. If the public entity determines the bid to be erroneous, the public entity shall return the bid security to the contractor.

> (c) A contractor who withdraws a bid under the provisions of this section may not resubmit a bid on the same project. If the bid withdrawn is the lowest bid, the next lowest bid may be accepted.

W. Va. Code § 5-22-2(b) and (c).[8]

---

> or take any bid, including receiving any hand delivered bid, after the time advertised to take bids. No bid may be opened on days which are recognized as holidays by the United States postal service. No public entity may accept or consider any bids that do not contain a valid bid bond or other surety approved by the State of West Virginia or its subdivisions.

[8] Because the first sentence of Section 2(b) has no bearing on our Decision, we have omitted it from the discussion. The first sentence of Section 2(b) provides: "The provisions and requirements of this section, section one of article twenty-two of this chapter [W. Va. Code § 5-22-1], the requirements stated in the advertisement for bids and the requirements on the bid form may not be waived by any public entity." W. Va. Code § 5-22-2(b). *See also Wiseman Const. Co. v. Maynard C. Smith Const. Co.*, 236 W. Va. 351, 358 n.10, 779 S.E.2d 893, 900 n.10 (2015) (explaining the first sentence of Section 2(b)). There is no allegation DOH waived any of these requirements.

Throughout this case, Olympus has asserted that, if a contractor discovers an error after bid proposals are opened, Section 2 gives the contractor a right to either *withdraw* the erroneous bid or have the bid *rejected* by the government agency. The DOH takes a contrary position and argues that there is nothing in Section 2 allowing a bidder to withdraw a proposal after the opening process has occurred. The general rule when construing a statute is that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly,* 135 W. Va. 877, 65 S.E.2d 488 (1951). However, a statute is open to construction "where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949). "When there is uncertainty as to the meaning of a statute, the statute is ambiguous and must be evaluated to give effect to the intent of the Legislature." *Dale v. Painter*, 234 W. Va. 343, 349, 765 S.E.2d 232, 238 (2014). "A statute that is ambiguous must be construed before it can be applied." Syl. Pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

"In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Section 2, evaluated as a whole, leads us to find the statute is ambiguous because it is susceptible to multiple conflicting, but reasonable,

11

interpretations regarding whether a contractor may withdraw an erroneous bid. The title of the statute suggests that paragraph (b) should pertain to both the "right to reject or withdraw bid," but paragraph (b) contains only a process for a government agency to reject an erroneous bid.[9] Paragraph (b) certainly allows a government agency to reject a faulty bid on its own initiative, but it is unclear what an agency is to do when, as in this case, a bidding contractor pleads to have an erroneous bid withdrawn or rejected. Furthermore, paragraph (c) discusses a "contractor who withdraws a bid under the provisions of this section," but there are no provisions elsewhere in Section 2 pertaining to withdrawals of bids. Viewing the parts of the statute as a whole, we perceive that the Legislature intended for Section 2 to encompass a means for contractors to withdraw, or otherwise remove from government consideration, bids that are materially erroneous.

Our examination of the legislative history behind the adoption of Section 2 bolsters this conclusion. When Section 2 was first introduced in the Legislature in 2003, paragraph (b) originally centered on the means for a contractor to withdraw a bid proposal that contained "mechanical, clerical, or mathematical errors." The proposed version of paragraph (b) of Section 2 stated, in part:

> *Bids containing patently obvious, unintentional, and substantial mechanical, clerical, or mathematical errors*, or errors of unintentional omission of a substantial quantity of work, labor, material, or services made directly in the

___

[9] We recognize, of course, that statutory titles are not part of a statute; they are "intended as mere catchwords to indicate the contents of the section and are not titles of the sections, or any part of the statute . . . ." W. Va. Code § 2-2-10(b)(3) (2023).

12

compilation of the bid, shall not be considered by the public entity but *may be withdrawn by the contractor* if clear and convincing sworn, written evidence of such errors is furnished to the public entity within forty-eight hours of the bid opening excluding Saturdays, Sundays, and legal holidays. Such errors must be clearly shown by objective evidence drawn from inspection of the original work papers, documents, or materials used in the preparation of the bid sought to be withdrawn. If the public entity determines that the error is a patently obvious mechanical, clerical, or mathematical error, or unintentional omission of a substantial quantity of work, labor, material, or services, as opposed to a judgment error, and that the bid was submitted in good faith it shall accept the withdrawal and return the bid security to the contractor.

House Bill 3117 (Introduced February 21, 2003; emphasis added). House Bill 3117 also contained a paragraph (c) to Section 2, the vestiges of which survived into the current statute, which provided that "[a] contractor who attempts to withdraw a bid under the provisions of this Section shall not be allowed to resubmit a bid on the project." *Id.*

The House Bill 3117 version of Section 2 was heavily revised by the Legislature into its current form through judiciary committee substitutions and amendments on the floor, but those revisions further demonstrate a legislative goal to permit contractors, acting in good faith, to withdraw bid proposals that were formulated with substantial errors. As we noted earlier, the amendments adopted by the Legislature in 2003 created a test in Section 2(b) with four conditions: (1) there must be an error in the bid; (2) the error must be material to the contract; (3) rejection must not cause hardship on the public entity (other than the loss of the bargain presented by the erroneous bid); and (4) enforcement of the erroneous bid would be unconscionable.

13

The legal question of whether a contractor may withdraw a bid proposal containing a unilaterally made mistake appears to be a novel one in West Virginia's courts. But when the Legislature incorporated the above four conditions into Section 2 in 2003, it seems to have been aware that the majority of other states' courts have applied similar conditions through common-law rules and excused contractors from their bid mistakes. Stated simply, courts across the country have allowed the withdrawal of a bid containing errors material to the contract when it would be unconscionable to enforce a contract formed on the bid, and where withdrawal of the bid would do nothing more than return the government agency to the status quo before it opened the bid.

The concept of permitting a contractor to withdraw an erroneous bid has been a principle of the common law since at least 1900. In *Moffett, Hodgkins & Clarke Co. v. Rochester*, 178 U.S. 373 (1900), an engineer (who was "extremely nearsighted" and working in haste and confusion) transcribed his figures and mistakenly inserted into a bid the sum of $1.50 per cubic yard rather than the $15.00 per cubic yard intended (for moving 2,000 cubic yards of material). *Id.* at 377. The U.S. Supreme Court reasoned that the erroneous bid proposal sent to the government was one which the contractor never intended to make; because the minds of the parties had never met, and the government was trying to take "an improper and unconscionable advantage" of the contractor's clerical errors, no contract could be formed by the faulty bid. *Id.* at 379.

Since 1900, the vast majority of jurisdictions have refused to bind contractors to erroneous bids. *See generally*, David B. Harrison, *Right of bidder for state or municipal contract to rescind bid on ground that bid was based upon his own mistake or that of his employee*, 2 A.L.R.4th 991 (1980) ("Although there is some diversity among the sets of criteria applied by the courts in determining a bidder's right to a decree of rescission or to similar relief in situations where the bidder's proposal was based upon his own mistake, courts in virtually all the reported cases . . . have recognized that . . . such relief may be properly granted."). Courts have articulated a complicated amalgam of common-law conditions to be weighed before a mistaken bid may be withdrawn, conditions that vary depending upon whether the bid is withdrawn before it is opened by the government agency, after it is opened but before it is accepted, or after it is accepted and a contract formed; and whether the government agency knew of or induced the mistake. One court gave this two-part guideline for bid withdrawals:

> [T]he majority of courts which have addressed the question hold that under the proper circumstances a contractor should be permitted to withdraw a bid or rescind a contract when its bid is based on a mistake of fact. Although courts have not been unanimous in articulating the particular conditions which entitle a contractor to withdraw a bid or rescind a contract, they have generally granted relief to a bidder if (1) the error is so substantial that enforcement would be unconscionable and (2) if notice is given before the nonmistaken party has substantially changed its position so that it cannot be returned to the *status quo ante*.

*Nat'l Fire Ins. Co. of Hartford v. Brown & Martin Co*., 726 F. Supp. 1036, 1039 (D.S.C. 1989) (citation omitted). The approach applied by most courts is the doctrine of equitable recission, which one court assessed had four factors:

15

> The general rule as to the conditions precedent to rescission for unilateral mistakes may be summarized thus: 1, the mistake must be of such grave consequences that to enforce the contract as made or offered would be unconscionable; 2, the mistake must relate to a material feature of the contract; 3, the mistake must not have come about because of the violation of a positive legal duty or from culpable negligence; 4, the other party must be put in statu quo to the extent that he suffers no serious prejudice except the loss of his bargain.

*City of Baltimore v. De Luca-Davis Const. Co.*, 210 Md. 518, 527, 124 A.2d 557, 562 (1956). *See also James Cape & Sons Co. v. Mulcahy*, 700 N.W.2d 243, 255-57 (Wis. 2005) (identifying five factors for equitable recission). The treatise *Bruner and O'Connor on Construction Law* divines six different factors courts have relied upon to relieve a contractor from a unilateral mistake of fact in a bid:

> [R]elief from a unilateral material mistake of fact in a bid can be obtained (1) any time before or after acceptance of the bid if the accepting party had knowledge of or induced the mistake, but (2) only before acceptance if the accepting party is innocent of the mistake. As a general rule, relief for [a] "unilateral" bid mistake of which the bid recipient is *innocent* will be granted upon proof that: (1) the mistake is of such grave consequences that enforcement of the contract would be "unconscionable"; (2) the mistake relates to a "material" feature of the contract; (3) the mistake did not . . . result from the bidder's "gross negligence" or a violation of a "positive legal duty"; (4) the mistake was not caused by and was unknown to and not suspected by the bid recipient; (5) granting of relief must not cause the bid recipient any serious prejudice other than loss of the bargain; and (6) the bidder did not assume the risk of mistake.

Philip L. Bruner, Patrick J. O'Connor, Jr., 1 *Bruner & O'Connor on Construction Law* § 2:139 (2024). *See also*, Ernest M. Jones, *The Law of Mistaken Bids*, 48 U. Cin. L. Rev. 43, 54-55 (1979) (outlining seven factors underlying "the impalpable mistake principle").

16

In this case, we are guided exclusively by the Legislature's articulation of the four conditions in Section 2(b). However, it is clear that the Legislature incorporated into Section 2(b) (in a heavily modified form) the common-law concepts discussed above. In sum, our review of the common law of our sister states further supports the Legislature's intention to incorporate a mechanism into Section 2(b) that permits a contractor to trigger a government agency to remove an erroneous bid from consideration.

Moreover, we note that another Executive branch agency, the Purchasing Division of the Department of Administration, has adopted a regulation that expresses the legislative intention of Section 2. The Purchasing Division has regulations designed to assist State agencies in procuring services and supplies. The Purchasing Division regulation which permits a contractor to trigger removal of an erroneous bid from consideration provides:

> The Director may reject a bid *a vendor declares to be erroneous* after the bid opening, but otherwise appears to be responsive, if all of the following conditions exist: (1) An error was made; (2) The error materially affected the bid; (3) Rejection of the bid would not cause a hardship on the State spending unit involved, other than losing an opportunity to receive commodities, services or printing at a reduced cost; and (4) Enforcement of the part of the bid in error would be unconscionable. In order for the Director to reject a bid under this subsection, the public file must contain documented evidence that all of the conditions set forth in this subdivision exist.

148 C.S.R. § 1.6.3.6 (2023) (emphasis added). While the regulation does not allow a contractor to unilaterally withdraw a bid, it does permit a contractor to prompt the Purchasing Division to reject a bid if the four conditions of Section 2(b) are established.

Finally, because the bidding process is heavily regulated through statutes and regulations, it is generally accepted that when a government agency solicits bid proposals for a contract, and a contractor submits such a bid, both parties must exercise good faith throughout the bidding process. Bad faith in the submission of an erroneous bid is a ground for denying a contractor relief; the knowing acceptance of an erroneous bid by the government is a ground for granting the contractor relief. "This approach recognizes that a bidder should not be allowed to rescind a mistaken bid if the bid were made in bad faith and emphasizes the desirability of ensuring that public projects proceed on the basis of accurate cost estimates." *Powder Horn Constructors, Inc. v. City of Florence*, 754 P.2d 356, 362 (Colo. 1988). Federal cases hold that "[i]f the contracting officer is on notice, actual or constructive, of a bidder's mistake; fails properly to verify the bid; and subsequently accepts the bid, a presumption then arises that the contracting officer has acted in bad faith and taken advantage of the bidder" and reformation or rescission will be permitted. *BCM Corp. v. United States*, 2 Cl. Ct. 602, 608 (1983). Relief can be appropriate "to prevent the government from overreaching when it knows the contractor has made a

significant mistake during the bidding process." *Giesler v. United States*, 232 F.3d 864, 869 (Fed. Cir. 2000).[10]

In light of the above discussion, we find that West Virginia Code § 5-22-2 is ambiguous. However, the Legislature obviously intended for both bidding contractors *and* the government agency to have a remedy to withdraw or otherwise void bids with

---

[10] "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 529 n.9, 854 S.E.2d 870, 891 n.9 (2020) (quoting *Restatement (Second) of Contracts* § 205 (1981)). "Good faith" means "honesty in fact and the observance of reasonable commercial standards of fair dealing." W. Va. Code § 46-1-201(20) (2006). "[T]he implied good faith obligations of a contracting party are tantamount to the traditional duties of care to refrain from misrepresentation and to correct subsequently discovered error, insofar as any representation is intended to induce, and is material to, another party's decision to enter into a contract in justifiable reliance upon it." *Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 139, 562 A.2d 187, 190 (1989).

In the context of bidding, for government entities, "Discretion in awarding a . . . contract is not abused when it is predicated upon 'good faith and honesty.'" *Pioneer Co. v. Hutchinson*, 159 W. Va. 276, 287, 220 S.E.2d 894, 901 (1975), *overruled on other grounds by State ex rel. E. D. S. Fed. Corp. v. Ginsberg*, 163 W. Va. 647, 259 S.E.2d 618 (1979). "[T]he good faith and honesty of the award are the determining factors, and the courts may compel . . . officials to act in good faith in awarding contracts on competitive bidding." *Harrison v. City of Huntington*, 141 W. Va. 774, 780-81, 93 S.E.2d 221, 224 (1956). "[I]f the party receiving the bid knows . . . that the bidder made a mistake, the contract is voidable by the bidder." Wendell F. Grimes, Barry J. Walker, *Unilateral Mistakes in Construction Bids: Methods of Proof and Theories of Recovery – A Modern Approach*, 5 B.C. Indus. & Com. L.Rev. 213, 214 (1964). *See also Wiseman Const. Co.*, 236 W. Va. at 360, 779 S.E.2d at 902 ("[F]ederal standards have the same basic objective[] of . . . ensuring the good-faith conduct of agency officials in securing public contracts . . . ."). Regarding duties of bidding contractors, the *Restatement (Second) of Contracts* provides that "[a] mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation . . . unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." *Restatement (Second) of Contracts* § 157 (1981).

19

substantial clerical or arithmetical errors. We therefore hold that, under West Virginia Code § 5-22-2(b), after the opening of bid proposals, a government agency must reject a bid proposal that a bidding contractor declares to be erroneous, and seeks to withdraw, if the contractor establishes by a preponderance of the evidence that the following conditions exist: (1) An error was made in the bid; (2) The error materially affected the bid; (3) Rejection of the bid would not cause a hardship on the government agency, other than losing an opportunity to enter into the contract at the amount stated in the erroneous bid; and (4) Enforcement of the erroneous bid would be unconscionable.[11] If a contractor succeeds in having an erroneous bid withdrawn through the rejection process established in West Virginia Code § 5-22-2(b), then the government agency must return the bid bond to the contractor, and West Virginia Code § 5-22-2(c) mandates that the contractor may not resubmit a bid on the same contract. Finally, under West Virginia Code § 5-22-2(c), if the rejected or withdrawn bid was the lowest bid, then the government agency may proceed to accept the next lowest and acceptable bid.

We now examine the parties' arguments concerning the application of Section 2(b) to the facts of this case. Like the circuit court, we must assess the record to determine if the four conditions in Section 2(b) are established by the record. The first

---

[11] As we noted earlier, during argument before this Court, counsel for the DOH agreed that Section 2 incorporates a preponderance standard of proof. Moreover, in response to questions from the Court, counsel further conceded that Section 2 is mandatory and that, if all four conditions are met, an agency must reject an erroneous bid.

condition is that there must be an error, some mistake of fact in the preparation of the bid.[12]

"Mistakes of fact in bid preparation result from such things as faulty addition, omission of items, typographical errors, misplaced decimals, errors in transferring items from detail summary sheets, transposition of numbers, misinterpretation of specifications and a host of other essentially clerical errors." 1 *Bruner & O'Connor on Construction Law* § 2:135 (footnotes omitted).

Before the circuit court, the DOH offered no direct evidence to counter Olympus's evidence of a mistake of fact; instead, the DOH offered its conclusion that Olympus's bid proposal, compared against the proposals by other contractors and DOH's pre-bid estimate, was not "different enough" to be read as a palpable, patent, obvious mistake – and so, it must not be mistake.[13] However, in its briefs and oral argument, the

---

[12] A mistake of fact is different from a mistake of judgment. Under the common-law rulings of most jurisdictions, a mistake of judgment in forming a bid proposal is not a ground for relief. "A 'mistake in judgment' exists when a bidder, even though not mistaken about existing facts, is mistaken about what business action should be taken based upon (1) existing facts, or (2) predicted future facts. No legal relief is granted for mistakes in judgment." 1 *Bruner & O'Connor on Construction Law* § 2:136. "Mistakes caused by errors in judgment or poor estimating by the bidder, or by his misconstruction of the legal effect of the specifications usually are not grounds for relief." Charles H. Witherwax, *Bid Bond Liability*, 1970 A.B.A. Sec. Ins. Negl. & Comp. L. Proc. 50, 52 (1970). Because the facts of this case hinge exclusively on a mistake of fact in Olympus's bid proposal, we decline to consider whether mistakes of judgment are encompassed by the language of Section 2(b).

[13] Counsel for the DOH expanded on this assertion at oral argument. Essentially, DOH engineers suspect that Olympus's attempt to withdraw could, in reality, be nothing more than "cold feet" and an attempt by Olympus to avoid complying with a bid significantly lower than other bids. We appreciate the DOH's suspicions, but the standards

Continued . . .

DOH makes a new argument to this Court that it did not make to the circuit court: that its conclusions are entitled to absolute deference, and that Olympus has done nothing to show the DOH abused its discretion or acted arbitrarily or capriciously. The DOH is accurate that the courts of this State have long held that the DOH has wide discretion in its application of bidding procedures to protect the public fisc and to ensure contracts are awarded to the lowest responsible bidder. *See, e.g.*, Syllabus, in part, *Excavation Const., Inc. v. Ritchie*, 159 W. Va. 888, 230 S.E.2d 822 (1976) ("When the Commissioner of the Department of Highways is required to award a contract to the lowest responsible bidder, he has wide discretion in determining whether to waive any technicalities in the requirements of properly promulgated regulations governing bidding procedures . . . ."); Syl. Pt. 5, in part, *Wiseman Const. Co. v. Maynard C. Smith Const. Co.*, 236 W. Va. 351, 779 S.E.2d 893 (2015) ("[T]he burden of proof in an action challenging the award of a contract by an unsuccessful bidder or a taxpayer is upon the challenger, who must show the agency's actions were arbitrary, capricious, or an abuse of discretion.").

---

for summary judgment require evidence from which the circuit court could either discern a triable issue of fact regarding DOH's theory, or indisputable evidence calling for a resolution as a matter of law. At the summary judgment stage, the DOH was required to "'offer some concrete evidence from which a reasonable finder of fact could return a verdict in its favor' or other 'significant probative evidence tending to support the complaint.'" *Williams v. Precision Coil, Inc.*, 194 W. Va. at 60, 459 S.E.2d at 337 (cleaned up). To the contrary, the DOH asserted that there were no triable issues of fact, and that summary judgment was proper.

22

Despite the circuit court's proper application of the standards for summary judgment, the circuit court did not weigh whether or to what degree the DOH's decision on the first factor was entitled to deference and whether, in light of the facts presented to the agency, "there [was] a rational basis for the administrative decision." *Id.* Stated differently, we discern that the circuit court, in the first instance, should weigh whether DOH's assessment of the first condition was arbitrary, capricious, or an abuse of its discretion. Hence, we vacate the circuit court's decision as to the first condition in Section 2(b), and we remand the case for the circuit court to determine whether the DOH's decision on the first factor was arbitrary, capricious, or an abuse of discretion, in light of the evidence properly before the circuit court.

As for the second, third, and fourth conditions in Section 2(b), we find that the DOH is not entitled to deference, for an obvious reason: the DOH never conducted any analysis or made any decisions or findings regarding those factors. Counsel for the DOH admitted to the trial court that the DOH stopped with the first factor. As counsel stated, "we don't believe there was a bid error. . . So we didn't even go to the other stand – the other three criteria." App'x at 570-71. Other than a conclusory statement by DOH's lawyer in the May 14, 2021, letter that was responding to entreaties from Olympus's lawyers, there is nothing in the record documenting or otherwise establishing that DOH weighed and applied the second, third, and fourth conditions of Section 2(b) to Olympus's evidence. We do not give the statement in the letter special status because "[t]he policy underlying a grant of special deference to agency decisions . . . does not extend to every agency action. It does

not extend to *ad hoc* representations on behalf of an agency, such as litigation arguments." Syl. Pt. 6, *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 465 S.E.2d 399 (1995). Hence, we examine the remaining three conditions to assess whether the circuit court was correct in its assessment those conditions were met.

Under the second condition in Section 2(b), there must be proof the error materially affected the bid, that is, that the error "must have a material[, adverse] effect on the agreed exchange of performances." *Restatement (Second) of the Law, Contracts*, § 153 cmt. b. A mistake is material when it "has prevented a true 'meeting of the minds[.]'" 1 *Bruner & O'Connor on Construction Law* § 2:133. In its solicitation for bid proposals, the DOH established removing and replacing 177 feet of expansion joints as a separate line item that required a separate, detailed bid. Olympus's error related exclusively to that consequential, material item in the contract. Moreover, the clerical error was material in that it made the bid significantly different from what the owner of Olympus intended it to be, resulting in a proposal $708,000 lower than intended. The substantial difference between the figure intended and the figure inserted into the bid, on a consequential element of the contract, establishes that Olympus had no "meeting of the minds" with the DOH to

form a contract based on the erroneous bid. On this record, we see no error by the circuit court that the error was material.[14]

The third condition of Section 2(b) is that there must be proof that rejection of the erroneous bid would not cause a hardship on the government agency involved, other than losing the opportunity to receive the goods or services at a reduced cost. The record shows that the DOH received notice from Olympus of the error in the bid proposal within three business days; when Olympus sought to be relieved from its bid under Section 2, DOH summarily declared that it did not believe a mistake had occurred and declared Olympus the winning bidder. On this record, it appears that if DOH had promptly conducted the Section 2(b) analysis, it could have awarded the contract to the second-lowest bidder within days. Instead, the DOH sought to take advantage of Olympus's overly low bid and thereby incurred lost time and higher costs for the taxpayer. This case arose during the COVID-19 pandemic and material costs increased at a dramatic pace. Because DOH did not let the contract promptly to the next-lowest bidder (as permitted by Section 2(c)), it was forced to advertise and solicit new bids in the Fall of 2021 at a much higher

---

[14] Moreover, the record indicates that counsel for the DOH conceded to the trial court that Olympus's error "is enough of an amount to be a material effect of a bid." App'x at 571.

25

price, and the work was not performed until the following year. We find this third condition established by the record.[15]

The fourth and final condition is that there must be proof that enforcement of the erroneous bid would be unconscionable. "The element of unconscionability addresses the magnitude of the unilateral mistake." 1 *Bruner & O'Connor on Construction Law* § 2:140. "Cases suggest that a pecuniary loss of as little as 10% may be deemed 'unconscionable' in apparent recognition of the notoriously low profit margins prevailing in the construction industry." *Id.*[16] Unconscionability has been described as a bargain that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other[.]" *McGinnis v. Cayton*, 173 W. Va. 102, 113, 312 S.E.2d 765, 776 (1984) (Harshbarger, J., concurring) (quoting *Hume v. United States*, 132

---

[15] Further, counsel for DOH conceded to the circuit court that "[r]ejection of the bid would not cause hardship on the public entity involved, other than the fact that the project would – might cost more. . . We don't believe there would be any additional harm to the Department." App'x at 571-572.

[16] Bruner and O'Connor go on to suggest in their treatise that:

> Unconscionability presumes a degree of hardship that depends not only on the magnitude of the error, in comparison to the size of the bid, but also on the profit that the bidder will make or the loss that the bidder will sustain if required to perform. The difference between unconscionability and materiality is that a mistake may be material to price but nevertheless not unconscionable because anticipated profit is sufficient to absorb the mistake.

1 *Bruner & O'Connor Construction Law* § 2:140 (quotation and footnotes omitted).

U.S. 406, 411 (1889), quoting *Earl of Chesterfield v. Janssen*, 28 Eng.Rep. 82, 100 (Ch. 1750)). The evidence of record indicates that the $708,000 understatement in Olympus's bid proposal was approximately 14% of its bid, an amount its owner stated was "catastrophic" to the company. Accordingly, we see no error in the circuit court's conclusion that the fourth condition was established by Olympus.

In summary, the record shows that Olympus established the second, third, and fourth conditions required by Section 2(b). The DOH did not conduct a proper analysis of those conditions when Olympus notified the DOH of the error in its bid proposal, and we see no error in the circuit court's analysis. However, regarding the first condition, whether "[a]n error was made," we find that the circuit court should have weighed whether to afford deference to the DOH's finding that error did not occur. Essentially, under the existing record, we direct the circuit court to assess whether the DOH's determination that "the Olympus bid is not an error" was arbitrary, capricious, or an abuse of discretion, in light of the evidence. If the circuit court again concludes that the DOH should have rejected Olympus's bid proposal due to errors, then the DOH should not have sought to compel Olympus to perform the contract under the terms of the faulty bid. And if Olympus could not be compelled to perform the contract, and should have been relieved from its bid proposal, then Olympus had no duty to sign the contract and the DOH has no authority to proceed against Olympus's bid bond.

## IV.  CONCLUSION

The circuit court's summary judgment order in favor of Olympus on the second, third, and fourth conditions in Section 2(b) is supported by the record, and it must be affirmed. The circuit court's order regarding the first condition is vacated, and the case is remanded for further proceedings as outlined above.

Affirmed, in part, vacated, in part, and remanded with directions.